**Aurora Delia FOJO, et al., Plaintiffs,**

v.

**AMERICAN EXPRESS COMPANY and American Express (Mexico) S.A., Defendants.**

**Civ. No. 79–2076CC.**

United States District Court, D. Puerto Rico.

Jan. 19, 1983.

José E. Fernández-Seín, Law Office of Harvey B. Nachman, Santurce, P.R., for plaintiffs.

Charles A. Cordero, Old San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

While traveling on a tour of various cities in the Orient, a group of Puerto Rican residents suffered an automobile accident when the driver of a tour vehicle in which they rode as passengers allegedly fell asleep and drove against oncoming traffic. Plaintiffs and their relatives filed this action for damages against the tour organizer, American Express Company and American Express, S.A. Since defendants are corporations of Delaware and Mexico, respectively, doing business in Puerto Rico and plaintiffs are all residents of Puerto Rico, federal jurisdiction is based on diversity of citizenship. 28 U.S.C. Sec. 1332(a)(1). A Motion for Summary Judgment was filed by defendants contending that they were not liable because there existed an independent contractor relationship between them and the entity providing ground transportation for the tour or under the exclusion of liability clause for acts of third parties contained in the tour brochure. The Court denied this motion for there were open controversies on these matters that defendants, as movants, had failed to clear of doubt. Defendants have urged that the law applicable to this case is that of Hong Kong, place where the accident occurred, rather than that of Puerto Rico where the pre-packaged tour was arranged, advertised and agreed upon. Although defendants had raised this choice of law argument since the early stages of the case, they never before indicated whether application of Puerto Rican law to the facts, instead of Hong Kong law, would produce a different result or outcome of the action. In fact, defendants have repeatedly stated that regarding the doctrine of independent contractor both laws are identical.[1] The

lack of this essential tier in the information provided has made the task of the Court unnecessarily difficult for the conflict of laws arguments are presented in a vacuum with no cognizable relationship to the practical results in the instant proceedings. Nevertheless, for the benefit of both parties and the Court, see note 1, supra, we deem it necessary to put the matter to rest now. With this in mind, the action was referred to the Magistrate for report and recommendation on which of the two forums' law should be applied. The Magistrate issued his report and, based on his characterization of the complaint as one sounding in tort, recommended that Hong Kong law be applied. We disagree.

■ There is no quarrel with the proposition that since this is an action based on diversity, the choice of law principles to be applied are those used by the courts in Puerto Rico. *Day & Zimmerman v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Mason v. Southern New England Conference, etc.,* 696 F.2d 135 at 136–137 (1st Cir.1982); *Jiménez Puig v. Avis Rent-A-Car System,* 574 F.2d 37, 40 (1st Cir.1978); *Bonn v. Puerto Rico International Airlines, Inc.,* 518 F.2d 89, 91 (1st Cir.1975). An important correlative to this principle is that when federal jurisdiction hinges on diversity the characterization of the cause of action is also done according to the guidelines of the state where the federal court is sitting. *Forsyth v. Cessna Aircraft Company,* 520 F.2d 608, 611 (9th Cir.1975); Restatement (Second) of Conflict of Laws Sec. 124.

1. At the initial stages of the action defendants raised the issue of the collateral source doctrine of Puerto Rico tort law which they also believed to be the same as the corresponding doctrine in Hong Kong law. This lack of any specific showing as to the real need to adopt Hong Kong law gave the impression that defendants' position was merely an additional alternative argument to strengthen their request for summary disposition. Since the Motion for Summary Judgment was denied, we believed

the matter of choice of law was abandoned. However, defendants raised the issue again without specifying its relevancy to the case. Although we are aware that a real conflict of law may not exist and this "much ado about nothing" may perhaps be just another detour in the often waylayed pathway to trial, we believe it is better to deal with the matter now and prevent unnecessary delay and interruption during the jury trial.

An examination of the pleadings, which, as previously held, are still in controversy, reveals that plaintiffs have encompassed a common set of facts under two possible theories of liability. One theory is based on an agency theory whereby the negligent acts of the driver are attributed to defendants (see: Paragraph 26 of the complaint) while the other is based on the failure of defendants in providing the type of tour services that they represented to plaintiffs. Both theories can comprise actions sounding in tort, yet it is inescapable to conclude from an examination of the pleadings that they are essentially tied to the contractual relationship established between the parties in Puerto Rico. In fact, the much hammered tort defense of independent contractor requires first that the court examine the terms and conditions of the travel agreement between the parties to see what were defendants' precise duties regarding ground transportation in Hong Kong. Depending on how these conditions are defined it may result that defendants were obliged to follow certain procedures in hiring ground transportation which may or may not have been violated regardless of what type of relationship is finally established as existing between defendants and the entity providing ground transportation in Hong Kong. For that matter, if the entity that provided ground transportation is shown to be an agent of defendants, liability for breach of performance of their contractual obligation could also be established. On the other hand, to characterize the pleadings as setting forth solely an action in tort for the negligent driving of the tour chauffeur would ignore the main thrust of the complaint, as phrased by plaintiffs, and would concentrate the issue on a matter which is incidental, and, possibly accessory to the rights and liabilities that may eventually be determined to arise from the contract.

■ In Puerto Rico if a contract is breached because of a contracting party's negligence the party at fault must indemnify for the damages caused.[2] This requirement that contractual obligation be executed without negligence is an additional protection offered by the Civil Code against negligent conduct and borrows many of its characteristics from the principles of *ex delicto* civil liability as contained in Art. 1802, *P.R. Laws Ann.*, Tit. 31 Sec. 5141.[3] The Supreme Court of Puerto Rico has indicated that the "mere fact that a wrongful act takes place as a consequence of a breach of contract does not alter the nature of the action." *Prieto v. Maryland Casualty Co.*, 98 PRR 583, 608 (1970). That Court has also ruled that a contractual relationship does not preclude that the contracting parties may also be liable to each other on actions sounding in tort that may arise from said relationship. *Maldonado v. Municipal Govt. of Ponce*, 39 PRR 226, 228 (1929). In so holding, the Supreme Court of Puerto Rico has recognized that although many of the characteristics of both claims are practically indistinguishable, see: note 3, *ante*, there are important differences between them that require differentiation in appropriate circumstances. *Cf.: Rosario Quiñones v. Municipal Govt. of Ponce*, 92 PRR 571, 578 (1965) (notice to municipality required when sued in tort is not prerequisite for actions based on wrongful breach of contract).

■ It would be improper to characterize the claim exclusively as a tort claim for the allegations also portray an action based on wrongful or negligent performance of a contractual obligation which will require that the court examine this relationship on the basis of contract law. This in turn, requires that the choice of law principles be

---

2. Article 1054 of the Civil Code, *P.R. Laws Ann.*, Tit. 31 Sec. 3018 states: "Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnity for the losses and damages caused thereby."

3. On the requirements of these two causes of action see: VIII–1, Manresa, "*Comentarios al Código Civil Español*," 141–167 (5th Ed.1950) and XIX, Scaevola, "*Código Civil*," 597–608 (2nd Ed.1957) discussing the Spanish equivalent articles, and H. Brau, "*Daños y Perjuicios Extracontractuales en Puerto Rico*," Sec. 1.09 (1980).

re-examined under a different light. The choice of law principles of Puerto Rico regarding actions for breach of contract hinge on the determination of which forum has the most significant contacts in relation to the matter in controversy. *Green Giant Co. v. Superior Court,* 104 PRR 685, 694 (1975). The Court summarized the doctrine of Puerto Rico on this matter, which borrows the general principles from common law, by stating:

> The doctrine of dominant contacts does not answer to quantitative standards. It is not the number of contacts that determines the applicable law but the quality of the latter in relation to the question in controversy. It is rather a question of an analytical process in which the different contacts are evaluated following the general principles or factors which have been formulated by the scientific doctrine to settle conflicts of law.... (citations omitted)
>
> The *"restatement"* sets forth the following general principles to guide this analytical process: a) the needs of the interstate and international systems, b) the relevant policies of the forum, c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, d) the protection of justified expectations, e) the basic policies underlying the particular field of law in which the controversy arises, f) certainty, predictability and uniformity of result, g) ease in the determination and application of the law to be applied. *Op. cit.* Sec. 6, p. 10. Leflar defends a variant of these principles summarizing them into the following: a) predictability of results, b) maintenance of interstate and international order, c) simplification of the judicial task, d) advancement of the forum's governmental interests and e) application of the better rule of law, *op. cit.* at 245. These principles are formulated merely as general guides which vary in importance and in application according to the nature of the case and the controversy in question.... *Id.* at 695–696 (citations omitted)

Although in *Green Giant Co., ante,* the Court also recognized the common-law principle that in contract actions the place of performance is an important criteria for the choice of law, it is important to recognize that the rest of this maxim establishes that the place of performance will not be determinative if another forum has a more significant connection with the matter and parties involved according to the general principles set forth by the Restatement.

■ In the present situation the interplay between the facts as alleged and these principles leads to the conclusion that Puerto Rico is the forum with the most significant contacts with the essential controversy and Puerto Rican law should be applied. First, there were many different and distant places of performance (Bangkok, Tokyo, Hong Kong, Los Angeles, etc.) To adopt "a place of performance" choice of law rule under these circumstances on this type of contract would be to ignore the principles of certainty, predictability, uniformity and ease in the determination of what law is to be applied and of its application. It may also create a potential for unjust situations by permitting a contracting party to choose the jurisdiction having the laws most favorable to it and to breach the contract there.[4] Furthermore, the fact that the contract was executed in Puerto Rico, that the contracting parties were residents of or were doing business in Puerto Rico and that the representations which allegedly induced plaintiffs to take the tour

---

4. We recognize that an excessively broad coverage of liabilities for said type of travel arrangements could also create unjust situations for entities such as defendants in being exposed to every act performed by unrelated third parties upon the travelers. Indeed, the many risks that even modern day traveling entail would make it extremely onerous for tour organizers to safeguard against every possibility not attributable to their negligence or responsibility. But, it is precisely this relationship and the exact elements of defendants' duty to plaintiffs—whether by the terms of the contract, their representations or otherwise—and, if this duty was somehow breached that are still in controversy and need to be determined during a trial on the merits.

were also made in this forum tilts the center of gravity of the action and its most significant contacts closer to Puerto Rico than to Hong Kong. These acts also support the proposition that the law of Puerto Rico would apply according to the parties' justifiable expectations, for plaintiffs could reasonably believe that defendants would answer in the forum they voluntarily chose to do business and in accordance with the laws of that forum to any unsatisfied obligation arising from the pre-packaged tour agreement. It is also reasonable to believe that one of the reasons these type of travel arrangements are undertaken is precisely to have a domestic entity available when one returns from the trip to deal with any pending matter which during the haste of traveling one could not properly attend to. Likewise, it is logical for defendants to assume that Puerto Rico would be the forum where they would seek protection of their rights and enforcement of the obligations assumed if the plaintiffs failed to comply with them in any manner.

The lack of any showing by defendants as to what public policy or interest of Hong Kong would be affected indicates that consideration of the other interested forum and maintenance of international order as portrayed in the guiding principles mentioned in *Green Giant, ante,* fail to tilt the balance towards Hong Kong and their consideration is practically irrelevant. Rather Puerto Rico is the forum where these interests are most evident. There is a preponderant interest in Puerto Rico of protecting its residents from wrongful acts and of enforcing its many dispositions regulating contracts on those that avail themselves of the forum's laws by doing business here with its residents. In *Widow of Fornaris v. Amer. Surety Co. of N.Y.,* 93 PRR 28 (1966), the Court emphasized the importance of offering the protection of the laws of Puerto Rico to its residents. *Id.,* at 46. The residence of the plaintiffs was the Court's over-

riding concern in determining which forum had the dominant interest. *Id.* In the instant case there are neither Hong Kong interests nor residents involved. There are only a group of residents of Puerto Rico who were injured during a tour they arranged in Puerto Rico with companies who engage in business and profit by it in this forum. To determine that Hong Kong law is the correct choice of law would be to sidestep the clear mandate of *Fornaris, ante,* in giving, whenever possible, the full protection of Puerto Rican law to its citizens and would also ignore the use of the guidelines formulated by the Supreme Court of Puerto Rico to deal with choice of law analysis.[5]

Accordingly, we hold that the dominant and most significant contacts in this cause of action lie in Puerto Rico and, as such, it is the substantive law of this forum that will be applied to adjudicate the merits of this case.

SO ORDERED.

---

5. Even if we were to consider, as did the Magistrate, that the gist of this action was the car accident in Hong Kong from which all else flowed and characterize the action as one sounding in tort, the principles of *Fornaris, ante,* and those enumerated in *Green Giant* applicable to tort actions, see: *Mason v. South-* ern *New England Conference,* 696 F.2d at 137, at p. 5, we would have to conclude that the contacts in Puerto Rico and the lack of any discernible Hong Kong interest overshadow the sole contact of the place of injury and point to Puerto Rico as the place with the most significant contacts.