DONNA MORAN, an Infant, by Her Mother and Natural Guardian, BETTY MORAN, et al., Appellants, v INTERNATIONAL PLAYTEX, INC., Respondent, et al., Defendants.

Second Department, September 24, 1984

APPEARANCES OF COUNSEL

*Moser & Henkin* (*Norman E. Henkin* and *Alexander S. Moser* of counsel), for appellants.

*Olwine, Connelly, Chase, O'Donnell & Weyher* (*Charles M. McCaghey, Glen J. Pogust* and *Angelo G. Savino* of counsel), for respondent.

OPINION OF THE COURT

*Per Curiam.*

The complaint seeks both compensatory and punitive damages for toxic shock syndrome suffered by plaintiff Donna Moran in February of 1981, and derivative damages suffered by her mother as a result of Donna's use of

tampons marketed by respondent International Playtex, Inc., sometime between October, 1980 and January, 1981. Following an examination of respondent's vice-president of research and development of family products, who was unable to answer questions concerning the company's sales and profits, plaintiffs moved for an additional examination of the respondent by its vice-president in charge of sales and its general manager. What plaintiffs sought to discover were the sales and net profits Playtex derived both from its superabsorbent tampons and from all other products for the year 1980 and for January, 1981. Plaintiffs contended that the information they sought was necessary to help establish liability for punitive damages because they intended to show that Playtex had a profit motive for keeping the product on the market after it became aware of its danger. In opposition to the motion, Playtex argued that plaintiffs were only entitled to a net worth statement that would be supplied if and when a special verdict found it liable for punitive damages. Special Term denied the motion on the ground that discovery of the financial information was premature.

At the outset of our analysis, we reject the Playtex contention that plaintiffs are entitled to nothing more than a net worth statement to be provided after a special verdict has been obtained. The sales and profit information plaintiffs seek may shed light on respondent's motive in allegedly failing to promptly remove its product from retailers' shelves after learning there was a connection between the product and toxic shock syndrome (see *Richards v Upjohn Co.,* 95 NM 675; *Toole v Richardson-Merrell, Inc.,* 251 Cal App 2d 689). When punitive damages are sought, all circumstances immediately connected with the transaction tending to exhibit or explain a defendant's motivation for the conduct in question are admissible in evidence (*Voltz v Blackmar,* 64 NY 440; *Le Mistral, Inc. v Columbia Broadcasting System,* 61 AD2d 491; 36 NY Jur 2d, Damages, § 189).

With respect to when the information must be furnished, we cannot agree that discovery must await the return of a special verdict entitling plaintiffs to punitive damages. Since proof of a defendant's reckless conduct is admissible during the liability phase of the trial in order to establish

punitive damage liability, acquisition of the information necessary to prove that liability obviously cannot await a special verdict establishing liability. Reliance by Playtex on *Rupert v Sellers* (48 AD2d 265) is misplaced. In *Rupert,* the Fourth Department held that the net worth of a punitive damage defendant is not discoverable until after a special verdict has been rendered finding defendant liable for such damages. *Rupert's* rationale is that net worth information relates solely to calculation of the amount of punitive damages, and a defendant should be protected from the harassing effects of net worth discovery as long as the claim for punitive damages has not been transformed into a special verdict establishing such liability. We neither reach nor indorse the *Rupert* holding at this point, since it is not relevant here because the requested financial information does not involve net worth and does not relate to the amount of punitive damages to be awarded, but to the right to recover punitive damages in the first place.

Nevertheless, we conclude that examination of a defendant's financial records or status, either to establish liability for punitive damages or the amount to be awarded therefor, should not be permitted until plaintiffs have demonstrated some factual basis for their punitive damage claim (see *Cobb v Superior Ct. of Los Angeles County,* 99 Cal App 3d 543; *Bryan v Best & Sons,* 453 A2d 107 [Del]; *Tennant v Charlton,* 377 So 2d 1169 [Fla]; *Breault v Friedli,* 610 SW2d 134 [Tenn]). The ease with which claims for punitive damages can be asserted makes it apparent that such claims may result in abuse and harassment if their mere assertion entitles plaintiffs to financial discovery (see *Cobb v Superior Ct. of Los Angeles County, supra; Tennant v Charlton, supra).*

Plaintiffs' moving papers at Special Term failed to disclose when it was that Playtex allegedly became aware of the adverse effects of its products. All the record reflects are plaintiffs' conclusory statements that respondent kept its product on the market long after it was aware that it was unsafe. Only in the brief on appeal is reference made to a governmental report that came to the conclusion that tampons were unsafe. Since the "factual basis" standard we now adopt as a prerequisite to financial discovery in a

punitive damage case is new in this State, plaintiffs should be given further opportunity to establish that they have such a basis. Accordingly, the order should be modified by providing that the denial is without prejudice to renewal on proper papers, and, as so modified, it should be affirmed.

LAZER, J. P., BROWN, BOYERS and EIBER, JJ., concur.

Order of the Supreme Court, Kings County, dated February 14, 1983, modified by adding thereto, after the word "denied", the following: "with leave to renew on proper papers." As so modified, order affirmed, without costs or disbursements.