**In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.**

**No. MDL–721.**

United States District Court,
D. Puerto Rico.

Aug. 6, 1990.

Plaintiffs' Steering Committee, Ana Luisa Navarro, Liaison, Hato Rey, Puerto Rico for plaintiffs.

Carlos Padín, Hato Rey, Puerto Rico, Liaison Counsel, for defendants.

## ORDER NO. 254

ACOSTA, District Judge.

### IN THE MATTER OF PUNITIVE DAMAGES

In the Motions for Directed Verdict submitted pursuant to Rule 50 F.R.C.P.,[1] defendants reasserted their contention that under pertinent choice of law principles punitive damages are not allowable in these proceedings and incorporated by reference motions previously submitted on this issue.[2] This Order analyses the grounds for disallowing plaintiffs' demands for punitive damages as stated in Amended Order No. 242 filed on May 11, 1990 docket No. 14575.[3]

### I. THE ISSUE

PUNITIVE DAMAGES: YES OR NO

Plaintiffs claim that under choice of law analysis they are entitled to recover puni-

---

**1.** *See* Defendants' Trial Liaison Committee's Motions for Directed Verdict ... Re: Damages (Category III Motions) docket No. 14321, filed on April 16, 1990 and the PSC's Opposition ... docket No. 14453, filed on April 25, 1990.

**2.** *See* docket Nos. 1159, 1436, 1596, 4522, 6324, 8085, 8090, 8561, 8795, 12185, 12186, 12339, 12340, 12343–67, 12377, 12383, 12406, 12425, 12460, 12463, 12479, 12490, 12498 and 12541. *See also,* Pretrial Order No. 39 (docket No. 1089,

filed on February 1, 1988), Pretrial Order No. 187 (docket No. 10438, filed on May 31, 1989), and *Court Margin Order No. 508 (docket No. 12289, filed on August 17, 1989).*

**3.** In Amended Order No. 242 the Court struck all claims for punitive damages and advised the parties it would subsequently issue a separate Order discussing the relevant legal and factual grounds for its ruling.

tive damages in the actions consolidated in these complex multidistrict proceedings which were originally instituted in four (4) different fora.

## II. APPLICABLE LAW

 Jurisdiction was premised on diversity of citizenship between the parties and courts sitting in diversity are bound to apply the substantive law of the forum where the action is filed, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) including its conflicts of law principles. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076 (1st Cir.1989); *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510 (1st Cir. 1989). In cases transferred from one federal judicial district to another pursuant to 28 U.S.C. § 1404 (federal change of venue statute) the transferee court shall "apply the law of the transferor court, regardless of who initiates the transfer." *Ferens v. John Deere Co.*, —— U.S. ——, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), *see also, Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). This same principle has been traditionally followed without much explanation in cases consolidated by the Multidistrict Panel pursuant to the provisions of 28 U.S.C. § 1407. *See, In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594 (7th Cir.1981); *In re Air Crash Disaster at Washington, D.C. on January 13, 1982*, 559 F.Supp. 333 (D.D.C.1983); Atwood, *The Choice-of-Law Dilemma in Mass Tort Litigation, Kicking Around Erie, Klaxon and Van Dusen*, 19 Conn.L.Rev. 9, 12 (1986); 19 Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction § 4506 (1982).

The simplicity of this general principle is deceptive, to say the least, in "mass tort" cases which involve large numbers of victims and defendants from multiple fora as well as a myriad of claims based on conduct which may have touched upon several states. In this type of litigation, the application of choice of law standards turns into a colossal struggle for the transferee court in attempting to ascertain relevant contacts between the parties and the multiple states and in struggling to understand, evaluate and weigh the particular policies behind the different statutes allowing or disallowing claims and/or remedies. In suits arising from product liability claims against manufacturers or distributors, the problem is further compounded by the very nature of corporations which are not "domiciled" in a particular forum but instead have contacts with numerous jurisdictions since they may be "incorporated in one state, headquartered in another, have their principal place of business in a third, manufacture products in several others, and do business in many more states." Note, *Interest Analysis Applied to Corporations: The Unprincipled Use of A Choice of Law Method*, 98 Yale L.J. 597, 603 (1989).

Choice of law rules have been designed and developed with the two-party case in mind, where the relevant contacts or interest at stake between the parties and the statutes in conflict are more easily ascertainable and not so difficult in application.

Cases arising from the San Juan Dupont Plaza Hotel fire were instituted in district courts located in Puerto Rico, California, Connecticut and New York. Pursuant to the aforementioned rules, we must look at the choice of law principles from each one of those jurisdictions to determine whether or not provisions pertaining to punitive damages exist there which are in conflict with each other. Should we find at the conclusion of our inquiry that, indeed, a statute allowing punitive damages is the applicable ·one, we must then take our analysis one step further and determine whether or not all plaintiffs will benefit from this provision and which defendants will be liable for them.[4]

---

4. Plaintiffs have indicated in their motions that they are seeking punitive damages exclusively against the non-Puerto Rico defendants.

## A. CHOICE OF LAW TESTS

### (1) Puerto Rico

█ The Supreme Court of Puerto Rico has adopted the "dominant or significant contacts" test for both actions sounding in tort or contract. In *Widow of Fornaris v. American Surety Co. of N.Y.*, 98 P.R.R. 28 (1966) the Supreme Court, after extensively criticizing the *lex loci delicti*, explicitly rejected its application in this forum and ruled that instead the laws of the jurisdiction with the most significant contacts with respect to the disputed issue should apply.

*Fornaris* involved a private airplane that disappeared on its way back to Puerto Rico from the nearby island of St. Thomas. In deciding that Puerto Rico's unlimited compensation would apply rather than the cap provided by the Virgin Islands law, the court found that Puerto Rico had the most dominant contacts since the corporation which owned the plane as well as the passengers were from Puerto Rico. It further reasoned that since the place of the accident had been "fortuitous", application of Puerto Rico's law would be more realistic and fair. The court also took into account policy considerations in its decision. It found that the passengers were entitled to the protection of Puerto Rico's laws and to benefit from its public policy. Lastly, it reasoned that even though considerations of foreseeability and fairness were paramount, these had to allow sufficient flexibility to respond to changing times and circumstances.

*Green Giant Co. v. Superior Court*, 104 D.P.R. 489 (1975) applied this same standard in a contract suit and added that it was not the number of the contacts but their quality with respect to the issue in controversy that was relevant. It mentioned that the principles stated in the Restatement (Second) Conflict of Laws, §§ 6 and 188 (1971) could be used "in the absence of appropriate legislative rules ... to guide the exercise of judicial discretion in each case." 4 Official Translations of the Opinions of the Supreme Court of Puerto Rico, 682, 696; *see also, Federal Insurance Company v. Dresser Industries, Inc.*, 111 D.P.R. 96 (1981) (application of dominant contacts rule to contract litigation).

The federal judicial system in Puerto Rico has also used these standards in actions filed under diversity provisions. In *Bonn v. Puerto Rico International Airlines, Inc.*, 518 F.2d 89 (1st. Cir.1975), a case arising from an airline crash in Puerto Rico where the plaintiffs and decedents were domiciled in the Virgin Islands and the defendant airline was engaged in business in both jurisdictions, the court opted to apply the Puerto Rico law of unlimited recovery. The court noted that both fora had contacts with the parties; the tickets were bought in St. Thomas but the accident and the conduct giving rise to the litigation took place in Puerto Rico "which would seem determinative" *Id.* at 92. However, it was a balancing of the policy considerations in applying the laws in conflict and the interest at stake for each jurisdiction that finally lead the court to conclude Puerto Rico's laws should apply. The court analyzed the interest in the Virgin Islands in limiting recovery as protecting defendant, i.e., the airline, which was also doing business in Puerto Rico with the deterrent policy embodied in Puerto Rico's statute.

In *Jimenez v. American Airlines, Inc.*, 579 F.Supp. 631 (D.P.R.1983) (airline crash near Chicago, Illinois on May 25, 1979) the court analyzed the dominant contacts involved and then weighed the policies at stake by the statutes in conflict. It concluded that Puerto Rico law should apply since that is where plaintiffs were domiciled and the forum had a greater interest in deterring wrongful conduct as well as ensuring plaintiffs due redress. The court held that the place of the accident had been "fortuitous" and hence, not conclusive. In *Fojo v. American Express Co.*, 554 F.Supp. 1199 (D.P.R.1983), after applying the dominant contacts principles to a breach of contract claim arising from an incident which took place in Hong Kong, the court found Puerto Rico's law applicable. Plaintiffs were all residents of Puerto Rico, the contract was executed there and the defendant was a Delaware and Mexico corporation doing business in Puerto Rico. The court took into account the need for

"certainty, predictability, uniformity and ease in the determination of what law is to be applied and of its application." *Id.* at 1202. In the end, a balancing of policies between the fora involved bolstered protection under Puerto Rico statutes since safeguarding the interests of residents is a paramount concern of this jurisdiction. The opinion, citing *Fornaris*, stated that courts have a "clear mandate ... in giving, whenever possible, the full protection of Puerto Rican law to its citizens". *Id.* at 1203.

### (2) California

California has adopted a "governmental interest" analysis that is commonly referred to as the "comparative impairment" approach for choice of law rules. *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721 (1978); *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719, cert. den. 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976). In its application, the court must follow a three step process.

1. Determine whether or not the laws of the states involved differ;

2. If they differ, determine whether or not the jurisdictions have an interest in having their laws applied;[5]

3. If a "true conflict" situation exists, the court must determine which jurisdiction's interests would be more impaired if its policy were subordinated to the policy of the other.

The conflict should be resolved by applying the law of the jurisdiction whose interest would be most impaired if its law were not applied. In other words, the law with the lower comparable pertinence of concern to the immediate issue would be the least comparatively impaired.

The comparative impairment approach to the resolution of true conflicts attempts to determine the relative commitment of the respective states to the laws involved. The approach incorporates several factors for consideration: the history and current status of the states' laws; the function and purpose of those laws. *Offshore,* 148 Cal.Rptr. at 873, 583 P.2d at 727.

In analyzing the policies behind the conflicting statutes, the court is not to make a value judgment as to "which conflicting law manifests the better or worthier social policy on the specific issue", *id.* but rather in "allocating respective spheres of lawmaking influence." *Offshore,* 148 Cal. Rptr. at 872, 583 P.2d at 726 citing Baxter, *Choice of Law and the Federal System* 16 Stan.L.Rev. 1, 11–12 (1963). In order to carry out this allocation process, the courts may examine whether or not the motivating force behind the statute is still in tune with modern needs and whether or not those policies can be achieved by alternate means. *Offshore,* 148 Cal.Rptr. at 872, 583 P.2d at 726; *Nicolet, Inc. v. Superior Court (Insurance Co. of North America),* 188 Cal.App.3d 28, 224 Cal.Rptr. 408 (1986).

Accordingly, we must determine whether or not California and Puerto Rico have legitimate governmental interests in applying their respective provisions pertaining to punitive damages and the need to further those policies in this particular litigation.

### (3) Connecticut

Connecticut will apply the doctrine of "lex loci" unless its application "would produce an arbitrary, irrational result" in which case it will apply the guidelines of the Restatement (Second) of Conflicts of Law. *See O'Connor v. O'Connor,* 201 Conn. 632, 650, 519 A.2d 13, 22 (1986); *Katz v. Gladstone,* 673 F.Supp. 76, 79 n. 2 (D.Conn.1987); *Emhart Industries, Inc. v. Duracell Intern. Inc.,* 665 F.Supp. 549, 567–568 (M.D.Tenn.1987).[6]

### (4) New York

New York has adopted the "interest analysis" in choice of law principles for

---

5. If only one jurisdiction has such an interest, a "false conflict" results and the law of that state will be applied.

6. As further discussed below, in applying Puerto Rico law victims are to be adequately compensated for which reason the outcome of this analysis does not entail an arbitrary result.

cases sounding in tort. The court will apply the law of the jurisdiction with greater interest in the litigation. This is done by examining the policies behind the conflicting laws. *Calla v. Shulsky*, 148 A.D.2d 60, 543 N.Y.S.2d 666 (1989); *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz*, 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679.

## B. DUE PROCESS LIMITATIONS

■ In analyzing the pertinent choice of law rules, courts are limited by due process considerations. Parties cannot be bound by the laws of states which have no interest in the controversy or to which they have no contacts. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). *See*, R. Leflar, L. McDougall and R. Felix, American Conflicts Law § 59 (4th ed. 1986). These requirements have been summarized as follows.

> [T]he decision of a state court to apply its own law will not be found unconstitutional, as a matter of due process ... when (1) that state has an interest in applying its law on the point in issue in order to implement the policy reflected in that law and the application of its law is not fundamentally unfair to the other party, or (2) that state has sufficient factual contacts with the underlying factual transaction so that it is reasonable for it to apply its law to the transaction on the basis of those contacts despite its lack of a substantive interest in doing so.

Sedler, Across State Lines; Applying the Conflict of Laws to Your Practice, ABA Sec.Gen.Practice 108–109 (1989) (footnote omitted). *See also*, Am.Law Prod.Liab.3d § 46:6 (Supp.1987); Richman and Reynolds, Understanding Conflict of Laws § 85 (1984).

## C. THE CONFLICT—PUNITIVE DAMAGES

### (1) Puerto Rico

■ The law in Puerto Rico does not provide for awards of punitive damages in this type of litigation. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983); *Diaz v. San Juan Light & Transit Co.*, 17 P.R.R. 64, 17 D.P.R. 69 (1911). *See also*, Pretrial Order No. 39 filed on February 1, 1988, docket No. 1089.

### (2) California

■ Punitive damages are allowable under California law "for the breach of an obligation not arising from contract, when it is proven ... that the defendant has been guilty of oppression, fraud, or malice ..." Cal.Civ.Code § 3294(a) (West 1989). In products liability suits, punitive damages may be recovered when a defendant places a product in the market in conscious disregard of the safety of consumers and others; that is, knowing of its dangerous condition, chooses to sell it without concern for its consequences. *Ehrhardt v. Brunswick, Inc.*, 186 Cal.App.3d 734, 231 Cal.Rptr. 60 (1986); *Magallanes v. Superior Court (E.R. Squibb & Sons, Inc.)*, 167 Cal.App.3d 878, 213 Cal.Rptr. 547 (1985); *Hasson v. Ford Motor Co.*, 32 Cal.3d 388, 185 Cal. Rptr. 654, 650 P.2d 1171 (1982); *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981). Punitive damages, however, are not available in wrongful death actions. *See, Georgie Boy Mfg. Inc. v. Superior Court for Los Angeles County*, 115 Cal.App.3d 217, 171 Cal.Rptr. 382 (1981); Cal.Civ.Code § 3294(d) and Cal. Code Civ.Proc. § 377 (West 1989).

### (3) Connecticut

■ Punitive damages may be awarded in Connecticut in product liability actions as follows.

> Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product. If the trier of fact determines that punitive damages

should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff. Conn.Gen.Stat.Ann. § 52–240b (West 1989).

#### (4) New York

 In New York, punitive damages may be claimed in actions sounding in tort, *Kinnarney v. Natale Auto Body*, 550 N.Y. S.2d 194 (App.Div.1990) and in products liability cases, *Home Ins. Co. v. American Home Products Corp.*, 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990); *Moran v. International Playtex, Inc.*, 103 A.D.2d 375, 480 N.Y.S.2d 6; *Baleno v. Jacuzzi Research, Inc.*, 93 A.D.2d 982, 461 N.Y.S.2d 659 (1983).

### D. THE CONTACTS

#### (1) Plaintiffs

 For purposes of illustration only,[7] we shall merely indicate the domicile of the "representative plaintiffs" who are presently trying their liability and damages claims against the "products" and "services defendants".[8] These are: Canada, Connecticut, Missouri, New Jersey and New York.

#### (2) Defendants

As previously mentioned, when dealing with corporate entities, ascertaining the jurisdictions with which they had relevant contacts presents no easy task. At the conclusion of plaintiffs' presentation of evidence there were 23 defendants remaining in this second phase trial. Even though some of them are incorporated or authorized to do business in Puerto Rico, the remaining are incorporated or conducting business activities in numerous other states.[9]

#### (3) Place of Injuries

It is undisputed that the injuries/damages claimed in these proceedings arose from the fire at the San Juan Dupont Hotel in Puerto Rico on December 31, 1986.

#### (4) Place of Conduct

The claims asserted in these proceedings are based essentially on negligence and product liability theories arising from acts or omissions which, although in some instances originated outside of this forum, consistently had its detrimental effect in Puerto Rico on December 31, 1986.

#### (5) Conclusion: Dominant/Significant Contacts

Since the parties are both local and non-domiciled, this factor cannot be conclusive to our choice of law analysis. As to the conduct at issue, even that which took place elsewhere had its definite impact in this forum. In addition, the accident occurred here and the damages flowing therefrom were felt here. Thus, we find that Puerto Rico is the forum where the dominant or most significant contacts coverage. As to the interest this jurisdiction has in the application of its laws to this litigation, we shall balance its policies with the competing ones to determine which one shall yield to the other.

### E. THE POLICIES AT STAKE

#### (1) Puerto Rico

Punitive damages is a foreign concept to Puerto Rico's civil law tradition. As explained in Pretrial Order No. 39 filed on February 1, 1988, docket No. 1089, punitive damages are allowed in this jurisdiction only in exceptional cases pursuant to special legislation. In disallowing punitive damages Puerto Rico has established a policy favoring defendants on this particular matter by shielding them from the onus of this additional liability.

In Puerto Rico, the policy in the area of recovery in litigation has always been to compensate plaintiffs to the fullest extent possible. In this regard, it is important to

---

7. According to our calculations, there are approximately 2,100 plaintiffs to these proceedings.

8. *See* Pretrial Order No. 187 filed on May 31, 1989, docket No. 10438.

9. According to the pleadings, some of these are: California, New York, Delaware, Illinois, Ohio, Virginia, New Hampshire, Massachusetts, Pennsylvania, North Carolina.

**86**

note that theories of liability as well as elements of damages are extremely liberal and are plaintiff oriented.[10] Also of significance is the fact that the Hotel tragedy also affected the local tourism industry which is vital to the economic interests of the Island. In summary, the impact of defendants' conduct in this forum was of a profound nature.

#### (2) California

■ Rather than seeking to compensate, punitive damages are designed to restrain defendants from engaging in a particular type of conduct as well as to deter similar behavior in others. *Adams v. Murakami*, 219 Cal.App.3d 1151G, 219 Cal. App.3d 647, 268 Cal.Rptr. 467 (1990); *Dyna–Med, Inc. v. Fair Employment and Housing Com.*, 43 Cal.3d 1379, 241 Cal. Rptr. 67, 743 P.2d 1323 (1987); *Magallanes*, supra. The Code itself provides that the purpose for allowing these damages is "for the sake of example and by way of punishing the defendant." Cal.Civ.Code § 3294(a) (West 1989).

Given the very nature of punitive damages in that it is directed specifically to defendants, California's interest in applying punitive damages in this litigation would be limited to those particular defendants who incurred in the proscribed conduct within its borders. It has no interest in reaching defendants who have no connection with that State.

Under these circumstances, we find that California's policy behind the punitive damages mandate must give way to that of Puerto Rico.

#### (3) Connecticut

Perhaps the easiest approach on choice of law analysis has been taken by Connecticut with the "lex loci" principles, provided it does not produce arbitrary or irrational results. We find that indeed, after all relevant factors have been considered, the circumstances of this particular litigation compel the application of the law of this forum, disallowing punitive damages for the claims asserted in the complaint.

#### (4) New York

Applying the "interest analysis" approach utilized in New York, again we reach the conclusion that Puerto Rico law on punitive damages should be applied. Only a handful of parties are domiciled in New York. On the other hand, Puerto Rico is the "locus" of the accident and has also revealed a strong policy concerning the application of punitive damages.

#### (5) Conclusion—Comparative Impairment

Allowing punitive damages in this litigation would seriously impair Puerto Rico's comprehensive legal system designed to compensate victims rather than punish wrongdoers. In addition, application of Puerto Rico's law comports with due process requirements given the contacts this forum has with the parties, it was the locus of the accident, and the interest it has in the compensation of victims or injured parties.

### F. DEPECAGE

■ Plaintiffs suggest that we apply the California punitive damages provisions selectively i.e., only in favor of certain plaintiffs vis à vis certain defendants. Under choice of law principles, the courts have the discretion of applying laws from diverse states to different issues arising in a single litigation. This procedure is known as "dépecage". "[D]ifferent substantive issues [can] properly be decided under the laws of different states when choice-influencing considerations differ as they apply to the different issues." Leflar, American Conflicts Law, § 96 at 280 (4th ed. 1986). *See also*, Sedler, *supra*, at 16–18; Am.Law Prod.Liab.3d, § 46:5 (Suppl. 1987); Shattuck, *The Revolution in Choice of Law: Another Insight*, (Book Review), 99 Harv.L.Rev. 1101 (1986); Weintraub, *A Defense of Interest Analysis in the Conflict of Laws and the Use of that Analysis in Products Liability Cases*, 46 Ohio St.

---

**10.** Puerto Rico utilizes the non-impact rule; all persons who can establish a causal relationship can recover for mental suffering or economic loss without need of kinship; decedent's injuries are inherited by the estate; a comparative negligence standard is applied and defendants are jointly liable to plaintiffs.

L.J. 493, 502–503 (1985); Pielemeier, *Constitutional Limitations on Choice of Law: The Special Case of Multistate Defamation*, 133 U.Pa.L.Rev. 381, 392–393 (1985).

Policy and fairness considerations, however, play a key role in its application. We find that the plaintiffs' suggestion would prove to be too difficult to implement and not necessarily responsive to policy considerations.[11]

## III. CONCLUSION

It is important to bear in mind that traditional choice of law principles are better suited to deal with cases involving a limited number of parties. In the context of multidistrict mass disasters the number of varying state choice of law rules and potential substantive laws to be applied are limitless and represent a taxing exercise for the courts. This occurs because competing policy considerations such as "deterrence and retribution, of allocation of risk, the equality of treatment of expectation and reliance, of compensation and grief, and of the meaning, or at least the valuation, of a life" must also be weighed. Lowenfeld, *Mass Torts and the Conflict of Laws: The Airline Disaster*, 1989:1 University of Illinois Law Review 157, 158.

Products liability litigation adds still another dimension to the problem. *See*, Sedler, *supra*, at 58–60. The courts are faced with too many variables which foster fragmentation of issues. *See*, Juenger, *Mass Disasters and the Conflict of Laws*, 1989:1 University of Illinois Law Review 105; Weintraub, *Methods for Resolving Conflict-of-Laws Problems in Mass Tort Litigation*, 1989:1 University of Illinois Law Review 129; Bird, Note, *Mass Tort Litigation: A Statutory Solution to the Choice of Law Impasse*, 96 Yale L.J. 1077 (1987);

Rowe and Sibley, *Beyond Diversity: Federal Multiparty, Multiforum Jurisdiction*, 135 U.Pa.L.Rev. 7 (1986).[12]

The process of deciding which state's law on punitive damages applies is a complex one because it involves examining the domicile of the plaintiff, the domicile of the defendant, the place where the wrongful conduct occurred, the place where the plaintiff was injured, and the place where the action was filed. Where a transferee judge in multidistrict litigation is making the decision for 110 different cases, it becomes a textbook example of the complicated process and of the types of issues which must be resolved. Schwartz, Lee and Kelly, Guide to Multistate Litigation § 10.14 at 211 (1985).

Airline disasters, although different because there are relatively few defendants and is usually in a "fortuitous" accident location, do provide some insight and guidelines in dealing with the choice of law dilemmas faced by transferee courts with multistate parties in deciding whether or not punitive damages will be allowed. After a detailed discussion of the pertinent choice of law principles and policies fostered by the different conflicting statutes, both courts deciding *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594 (7th. Cir.1981) and *In re Air Crash Disaster at Washington, D.C. on January 13, 1982*, 559 F.Supp. 333 (D.D.C.1983) concluded by applying the law of the locus of the accident which denied the punitive damages.[13]

Based on the foregoing, and having carefully considered all possible alternatives on the punitive damages issue, we find that given the circumstances of this particular multidistrict mass disaster litigation we must abide by Puerto Rico's stand on puni-

**11.** It is interesting to note that *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 500 F.Supp. 1044 (N.D.Ill.1980), the only mass disaster case that we found where the district court utilized this approach, was reversed on appeal allegedly based on different considerations. *See, In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594 (7th Cir.1981).

**12.** The authors recommend legislation to establish uniform and functional strategies in dealing with these intricate factual and policy riddles.

**13.** The Court of Appeals specifically reversed the determination made by the district court in the litigation entitled *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 500 F.Supp. 1044 (N.D.Ill.1980) which applied punitive damages against one defendant and not another.

tive damages and deny plaintiffs' request. We find this result comports with due process requirements in that Puerto Rico has an unequivocal interest in the litigation and all parties have the necessary contacts with this forum.[14]

IT IS SO ORDERED.

---

14. *See,* Amended order No. 242 filed on May 11, 1990 docket No. 14575.