**Xavier GARCIA, et al., Plaintiffs,**

**v.**

**DURON, INC., Defendant.**

**No. 01–1116 (JP).**

United States District Court,
D. Puerto Rico.

Nov. 14, 2001.

---

**16.** See Exhibit 6, defendant's memorandum.

**136**

Jaime E. Sifre–Rodríguez, Sánchez Betances & Sifre, San Juan, PR, for plaintiff.

Rubén T. Nigaglioni, McConnell Valdés, San Juan, PR, for defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendant Duron, Inc.'s ("Duron") Motion for Summary Judgment (docket No. 46), and Plaintiffs Duro–Colors Caribe, Inc. ("Duro–Colors") and Xavier García's ("García") opposition thereto (docket No. 52)[1]. Plaintiffs brought suit against Defendant, on January 24, 2001, for alleged violation of the Dealer's Act of Puerto Rico, 10 P.R.Laws Ann. § 278 (1998) ("Law 75"), breach of contract, and for alleged bad faith negotiations in violation of Article 1802 of the Puerto Rico Civil Code, 31 P.R.Laws Ann. § 5141. Plaintiffs have invoked the Court's jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship and because the amount in controversy, exclusive of interest and costs, exceeds $75,000. Defendant claims that Plaintiffs neither meet the definition of "dealer" under Law 75, that the asserted agreement does not meet the definition of "dealer's contract" under the Act, that no contract was established between Defendant and Plaintiffs and that Plaintiffs, rather than Defendant, withdrew from negotiations.

### II. UNCONTESTED FACTS

Based on the record and the parties' contentions, and after having completed discovery in the instant matter, the Court finds the following facts to be undisputed:

1. Duron, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 10406 Tucker Street, Beltsville, Maryland 20705.

2. Duron is engaged in the business of manufacturing and distributing paints and wall coverings.

3. Duro–Colors Caribe, Inc. is a corporation organized and existing under the laws of the Commonwealth of

---

1. The Court additionally has Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (docket No. 65) and Plaintiffs' Sur-reply thereto (docket No. 69).

Puerto Rico with its principal place of business at Edificio Centro de Seguros, Oficina 313, Ave. Ponce de León 701, San Juan, Puerto Rico 00907. The officers and directors of Duro–Colors Caribe, Inc. included Xavier García, José N. Bracero Rodríguez and Erik José Bracero Serrano.

4. In or about November 1997, Pete Pittroff (Duron's Senior Vice President of Sales) and Fred Ricker discussed with Xavier García the possibility of Duron selling paint in Puerto Rico.

5. In or about July 1998, Pete Pittroff and Todd Sodeman (Duron's Director of Corporate Sales) traveled with García to Puerto Rico.

6. Xavier García received a letter from Mike Carey (Duron's Corporate Director of Sales, Dealer Division) dated June 30, 1999 with an attachment titled "Opening Proposal for Duro–Colors Caribe" and another attachment titled "Opening Program."

7. At all times Duro–Colors, Inc. only bank account was checking account number 047–58595, held at Banco Popular.

8. Duro–Colors Caribe, Inc. was incorporated on or about July 12, 1999.

9. At all relevant times Xavier García was the majority shareholder of Duro–Colors Caribe, Inc.

10. Duro–Colors Caribe, Inc. had a warehouse lease.

11. Duron never sold Plaintiffs any Duron products to be held in inventory or for sale in Puerto Rico.

12. Plaintiffs never sold any Duron products.

13. Plaintiffs did not have any official sales personnel.

14. Plaintiffs prepared but did not implement a marketing plan.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at

trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. ANALYSIS

### 1. LAW 75

The first issue before this Court is whether or not Plaintiffs can be considered "dealers" for the purposes of Law 75. The statute itself does not resolve the matter. *See Triangle Trading Co., Inc. v. Robroy Industries, Inc.,* 200 F.3d 1 (1st Cir.1999). It defines a dealer as a "person actually interested in a dealer's contract because of his having **effectively in his charge** in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 P.R.Laws Ann. § 278(a) (Michie, 1998) (emphasis added). The Statute expands on this definition by explaining that a dealer's contract is a

> relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former **actually and effectively** takes charge of the distribution of merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico. *Id.* at § 278(b) (emphasis added).

■ This statute was adopted to protect those dealers that, after creating a favor-able market in Puerto Rico, were eliminated without any justification. *See Accessories & Communication Sys., Inc. v. Nortel Cala, Inc.,* 85 F.Supp.2d 95 (D.Puerto Rico, 2000). As the House Commerce and Industry Committee stated in the "Statement of Motives of Act No. 75":

> The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, "eliminate their dealers, concessionaires, or agent or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationship, as soon as these have created a favorable market and without taking in account their legitimate interests." *See Gemco Latinoamerica Inc. v. Seiko Time Corp.,* 623 F.Supp. 912, 918 (D.Puerto Rico, 1985). (citing Vol. 18, Part IV, Diario de Sesiones 1724).

In short, the statute's design is to prevent suppliers from sweeping in and benefitting from the toil and labor of its distributors, while leaving those who created the favorable market with either nothing or something significantly less than what they had worked so hard to create.

However, not all business transactions are protected by Law 75. *See Sheils Title Co. v. Commonwealth Land Title,* 184 F.3d 10 1999 WL 488087 (1st Cir.1999). "Despite the intent of the legislature to protect dealers, the statutory definition of a dealer encompasses a wide range of actors within the distribution process and threatens to extend Act 75's protective sweep well beyond the end that the statute sought to achieve." *Triangle,* at 4 (citing *Sudouest Import Sales Corp. v. Union Carbide,* 732 F.2d 14, 16 (1st Cir.1984) (citing *San Juan Mercantile Co., v. Canadian Trans. Co.,* 108 D.Puerto Rico 211, 215, 1978 WL 48787 (1978) 8 P.R.Offic.Trans. 218)). For

this reason the Puerto Rico Supreme Court has established eight factors that a court should consider when determining whether a claimant has acquired protected status:

1. Activities necessary to the transportation of the products from the manufacturer to the consumer or to some point in between;

2. Publicity;

3. Market coordination;

4. Merchandise delivery;

5. Collections;

6. Keeping Inventory;

7. Promotion;

8. Closing of sales contracts.

*See Accessories,* 85 F.Supp.2d at 98. *See also J. Soler Motors Inc. v. Kaiser Jeep Int. Corp.,* 108 D.P.R. 134, 142 (1978); *A.M. Capens Co. v. American Trading & Production,* 892 F.Supp. 36, 39 (D.P.R. 1995); *Roberco, Inc. v. Oxford Industries, Inc.,* 122 D.P.R. 115, 131–132, 1988 WL 580769 (1988).

■ The Court will now examine the facts in the case at hand in light of the factors outlined above. It is an uncontested fact that Duro–Caribe, never purchased any product from Duron. No product was ever delivered to Duro–Caribe nor was any product ever held in inventory. Since there was no product in inventory, no product was ever sold or delivered. Since no product was ever sold, there were no collections to be made. Although a marketing plan was created, it was never implemented. These facts in themselves show that Plaintiffs fail to meet at least six (6) of the factors need to be considered a dealer. However, the Court keeps in mind that, "[a]lthough no single factor is deemed to be conclusive, both the creating of a

favorable market and the gaining of consumers for a product or a service, have been regarded by this court as the two most salient criterion in identifying a dealer under § 278." *Accessories,* 85 F.Supp.2d at 98 (citing *Triangle Trading Co. v. Robroy Industries Inc.,* 952 F.Supp. 75, 77 (D.Puerto Rico 1997)).

Plaintiffs argue that they did considerable market research, created a market and gained sales contracts. It is of no doubt that research was performed. Seasoned business people, like García, are expected to research business propositions before pursuing them. However, market research is not synonymous with creating a favorable market. While letters indicate Plaintiffs received some favorable responses to their inquiries [2], a letter stating interest is not a sales contract. Therefore the Court find that when comparing the facts in the case at hand to both the standard set forth above and the legislative intent of Rule 75, it is evident that Plaintiffs were not dealers.

■ Plaintiffs argue that the cash expenditures in securing a warehouse facility and hiring a general manager further evidence their dealer status. However, "unilateral efforts to sell a product and develop a market are not sufficient, alone, to create a dealer relationship within the purview of Law 75." *Euromotion, Inc. v. BMW of North America, Inc.,* 136 F.3d 866, 871 (1st Cir.1998) (citing *Líneas Aéreas Costarricenses v. Caribbean Gen., Inc.,* 682 F.Supp. 117, 121 (D.P.R.1988)). It is without question that Plaintiffs had the intention to create a dealership and in fact, that Duro–Colors was created primarily with the intention to distribute Duron products. Unfortunately for Plaintiffs, preparing to

**2.** While there are some fourteen letters, more than half of these letters are signed by the same two people, thus cutting the number of contacts made to seven.

become a dealer and actually becoming a dealer are not the same.

■ In the alternative, Plaintiffs argue that the agreement being negotiated between Duron and García represented a dealers contract[3]. In considering this argument, the Court turns directly to the statute, which states in pertinent part, that a dealer's contract is created when, "the ['dealer'] **actually and effectively** takes charge of the distribution of merchandise . . .," 10 P.R.Laws Ann. § 278(b) (Michie, 1998) (emphasis added). Plaintiffs never bought, held in inventory, or sold a single can of Duron paint. The Court fails to see how Plaintiffs ever actually or effectively took charge of the distribution of Duron products. For this reason the Court **GRANTS IN PART** Defendant's Motion for Summary Judgment concerning Plaintiffs' claim under Law 75.

## 2. CHOICE OF LAW

■ Defendant argues that Maryland law should govern the Court's analysis of the remaining claims for breach of contract and bad faith negotiations. In contrast, Plaintiffs argue that Puerto Rico law should govern in the case. The Supreme Court of the United States has held that a federal court sitting in a diversity case must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The Supreme Court of Puerto Rico has approved the "dominant or significant contacts" test for contract and tort actions. *A.M. Capen's Co., Inc. v. American Trad. & Prod. Corp.*, 74 F.3d 317, 320 (1st Cir.1996) (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 745 F.Supp. 79, 82 (D.P.R. 1990)). Thus, "the laws of the jurisdiction with the most significant contacts with respect to the disputed issue should apply." *Id.* In determining this question, recourse to the Restatement (Second) of Conflict of Laws is appropriate. *Id.*

According to Section 188 of the Restatement (Second), absent a contractual choice of law, the following considerations should be taken into account when determining which jurisdiction's law should control:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Restatement (Second) of Conflict of Laws* § 188 (1971)

The Court declines to determine the validity of the document. However, it will apply the aforementioned factors in order to determine what law should govern the remaining claims in the case at hand. The document was created and signed in the continental United States. The document in question was sent from Duron's office in Maryland and was signed by García in his office in Virginia. Negotiations of the document occurred in a number of locations, including Puerto Rico, specifically, when Duron's representatives traveled to Puerto Rico along with García. The document concerns the distribution of Duron products in Puerto Rico and the distribution of Duron Products to the remainder of the Caribbean from Puerto Rico. Finally, Defendant argues that the document was between Duron and García, and that the

---

**3.** The Court refrains from determining at this time whether this agreement is or is not a valid contract.

former is not incorporated in and the latter is not a resident of Puerto Rico. However, as the Court has previously stated, Duro–Colors was created primarily with the purpose of distributing Duron products. Duro–Colors is incorporated under the laws of Puerto Rico.

When comparing the facts in this case to those in *A.M. Capens,* the Court sees no doubt as to what law should apply in a case such as this. In *A.M. Capens,* the defendant's presence in Puerto Rico was almost non-existent. Defendant's had no employees, no office space or warehouses, no address and no assets in Puerto Rico. *A.M. Capen's,* 74 F.3d at 320. Furthermore, the terms contained in their agreement left the products at the point of embarkation in New Jersey, while all deliveries to Puerto Rico were subject to the terms of separate agreements with other parties. *Id.* In the case at hand, the purpose of the agreement was clear. The negotiations deal with the distribution of paint and wall coverings in Puerto Rico. This distribution was to be achieved by a Puerto Rico corporation. All products were to be delivered from Duron to Puerto Rico. "[A] state where a contract provides that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice." *Restatement,* § 188 (cmt. c). Given that the document in question lacks a clause specifying choice of law, and all other indicators point to Puerto Rico, the Court **WILL** apply Puerto Rico law to the remaining claims in this suit.

### 3. BREACH OF CONTRACT AND ARTICLE 1802

As the Court stated earlier, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See* *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For the remaining two claims in the case at hand, the Court finds there still exists questions of material fact. For this reason, the Court hereby **DENIES IN PART** Defendant's Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment, and **DISMISSES** Plaintiffs claim arising from the Dealer's act of Puerto Rico, 10 P.R.Laws Ann. § 278 (1998), **WITH PREJUDICE.** Additionally, Puerto Rico law **WILL** be applied to the remaining two claims in this suit.

**IT IS SO ORDERED.**