A.M. CAPENS CO., INC., Plaintiff,

v.

AMERICAN TRADING AND PRODUC-
TION CORPORATION, Defendant.

A.M. CAPENS CO., INC., Plaintiff,

v.

Blas Rossy ASENCIO, et al., Defendant.

Civ. Nos. 94–1367(DRD), 94–1483(DRD).

United States District Court,
D. Puerto Rico.

June 16, 1995.

Philip E. Roberts, San Juan, PR, for plaintiff.

Jose E. Colon–Santana, Hato Rey, PR and Jose E. Colon–Santana, Rio Piedras, PR, for defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Before the Court are A.M. Capens Co., Inc. (Capens) request for provisional remedy (Docket #4)[1] and defendant, American Trading and Production Corporation's (ATAPCO) request for change of venue (Docket #11).

The "Motion for Provisional Remedy" was filed by Capens on April 25, 1994. A hearing on the Motion was celebrated before Hon. Magistrate Judge Jesus Antonio Castellanos on June 6, 1994 as per order of the Court (Docket #6). The Magistrate's Report and Recommendation followed on August 18, 1994 (Docket #26) and objections thereto were filed by the parties on August 29, 1994 and September 1, 1994 (Docket #'s 27 and 30). The case was assigned to the subscribing judge on November 1, 1994 (Docket #34).

A hearing was held before the undersigned in May 15, 1995. At that date the Court requested the parties' memorandums on the criteria required under Puerto Rico's Act 75, P.R. Laws Ann., tit. 10 § 278 et seq. for qualifying distributor/dealer status under the Act. Memorandums were filed by the parties on May 19, 1995 (Docket #42 and #43).

Having reviewed the Magistrate's Report and Recommendation and objections thereto, having heard the parties arguments and examined the parties memorandums, the Court hereby adopts the Magistrate's recommendation and grants the provisional remedy requested by Capens. The change of venue requested by ATAPCO is denied.

## DISCUSSION

### Provisional Remedy Request

Capens seeks a provisional remedy pursuant to Article 3A of the Dealer's Contracts Act, Law No. 75 of June 24, 1964, as amended, P.R. Laws Ann. tit 10 § 278b–1.

Capens alleges the exclusive representation in Puerto Rico of certain products of ATAPCO; that such representation was impaired and/or diminished without just cause and that therefore Capens is entitled to the provisional remedy.

Article 3A of the Dealer's Act provides in pertinent part:

> In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice, thereof.

■ In the First Circuit Jurisdiction, trial courts in considering preliminary injunction requests must use a quadripartite test. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d

---

1. References to Docket numbers are documents filed on case number 94–1367. Other documents related are Docket 16, 17, 18, 20, 23, 27 and 30.

4, 5 (1st Cir.1991). Under those standards the relief requested is appropriate if: (1) petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

■ Upon solving a request for provisional remedy under Article 3A (§ 278b–1) of the Puerto Rico Dealer's Act the district court need not rely on the criteria of "probability of success," *DeMoss v. Kelly Services, Inc.*, 493 F.2d 1012, 1015 (1st Cir.1974); notwithstanding, nothing in article 3A prevents a district court from using this criteria. *Luis Rosario v. Amana Refrigeration*, 733 F.2d 172 (1984).[2]

■ Petitioner herein, Capens, has shown the existence of the dealer's agreement by Exhibit #5 presented at the hearing held before the Magistrate Judge.[3] Said document is a letter dated June 6, 1978 subscribed by Mr. John F. Cornforth, General Sales and Marketing Manager of Globe Weis which confirms Capens' immediate appointment as Globe Weis *exclusive representative* for Puerto Rico, Caribbean Area, Dominican Republic and Central and South America. Plaintiff's Exhibit #6 and Joint Exhibits I and II also support this finding.

Furthermore, Capens has also demonstrated that ATAPCO assumed as successor of Globe Weis the obligations under the dealership agreement. (See Plaintiff's Exhibits #7–9, Joint Exhibits VI and VII and Hrg. Tr. at p. 83). For example at Joint Exhibit #I, A.M. Capens is referred to as ATAPCO's exclusive representative/distributor for Puerto Rico.

Prima facie ATAPCO has violated the dealership relationship without "just cause" when defendant informed Capens that effective January 1, 1994 "the Caribbean and Central American Territories will become non-exclusive territories for A.M. Capens." (Plaintiff's Exhibit #12, see also Hrg.Tr. at p. 87).

Moreover, at the hearing before the Hon. Magistrate Castellanos, Mr. Blas Rossy Asencio[4] admitted that he is a sales representative of ATAPCO in Puerto Rico for various products including those for which Capens has been the exclusive representative under the contract with ATAPCO, namely, Globe–Weis and Steelmaster.

Under the above stated circumstances Capens is entitled to the provisional remedy requested since Capens has exhibited a "likelihood of success" on the merits: Capens had the exclusivity and ATAPCO impaired and/or diminished the exclusivity without "just cause"[5]. Capens has also shown that his business will suffer irreparable injury if the injunction is not granted because Mr. Rossy Asencio will continue to sell the products in the areas wherein Capens had the exclusivity with the added competitive advantage for Asencio of freight charges assumed by ATAPCO. The above will obviously mean

---

**2.** "To the contrary, article 3A requires the court to look both to the parties 'interests' and to the Act's 'public policy'. The basic 'public policy' of the act is to prevent dealer termination without 'just cause'. *Marina Industrial, Inc. v. Brown Boveri, Corp.*, —— D.P.R. ——, 83 J.T.S. 31 (March 13, 1983); *San Juan Mercantile Co. v. Canadian Transport Corp., Ltd.*, 108 D.P.R. 211, 216 (1978); Statement of Motives of Act 75, 1964 P.R.Laws, 4th Reg.Sess. 231; See *Sudouest Import Sales Corp. v. Union Carbide Corp.*, 732 F.2d 14, 16 (1st Cir.1984). The strength of the parties' interests also may depend upon the likelihood that 'just cause' will be found. Thus, in *Pan American Computer Corp. v. Data General Corp.*, 652 F.2d 215, 217 (1st Cir.1981) we stated: While the statute does not require a finding of

likelihood of success as a prerequisite to issuance of an injunction, the court's view of the merits would certainly affect it's judgment of the parties' interests and of the injunction's effect on the statutory policies."

**3.** The exhibits correspond to evidence introduced at the hearing before the Magistrate Judge.

**4.** Mr. Asencio is codefendant in a consolidated case wherein a cause of action under Puerto Rican Law of tortious interference with contractual relationship is alleged (*Gen. Office Prods. v. A.M. Capens' Sons*, 115 D.P.R. 553 (1984)).

**5.** No cause was expressed in the letter of December 14, 1993, Exhibit #9.

that Capens' business market will be significantly irreparably diminished.

The harm that Capens will suffer most certainly outweighs ATAPCO's possible harm: the business area will remain unchanged (the Caribbean and Central and South America) and ATAPCO will continue receiving benefits, either through Mr. Rossy Asencio or through A.M. Capens; however, the harm is for Capens who will lose business market should Mr. Rossy Asencio continue to interfere with the customers.

Last, the public interest will not be adversely affected by granting the remedy. On the contrary at this stage of the proceedings the public interest and the public policy that Act 75 seeked to protect will be adequately safeguarded by the issuance of the provisional remedy. *DeMoss v. Kelly,* supra. ATAPCO has not shown otherwise.

We must also stress that the injunctive relief herein granted is statutory in nature wherein the principal criteria is "likelihood of success," *Pan American Computer Corp. v. Data General Corp.,* supra.

### Dealer Status

Arguments and memorandums were requested and received by the Court on the issue of Capens' "dealership" status and the consequential applicability of Act 75. The question of dealership status is a core and a close matter.

ATAPCO sustains that plaintiff is not a dealer under Act 75.

■ Act 75 states that a dealer is a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico *the distribution, agency, concession or representation of a given merchandise or service*". See P.R. Laws Anno. tit. 10 § 278(b). The Act defines "dealer" in terms of the person's activities in relation to the merchandise or service. That is: does the person distribute, act as an agent, act as a concessionaire or as a representative of a given merchandise or service. Section 278(b) defines a dealer's contract as *a relationship* in which a dealer effectively has the responsibility of distributing certain merchandise, or of the rendering of a service, by concession or franchise. Pursuant to section 278(b), the person should be responsible of the distribution either in the form of a concession or of a franchise.

■ In *EBI, Inc. v. Gator Industries, Inc.,* 807 F.2d 1, 2 (1st Cir.1986) the First Circuit Court assessed a dealer's lack of status as a dealer under Act No. 75. The Court expressed that under the facts presented therein plaintiff "maintained no inventories, had no investment in warehouse or other facilities, had no responsibility for shipment or delivery, engaged in no advertising or formal promotion, and assumed no credit risk". Furthermore the Court stated in that plaintiffs' effort therein included "only one out of eight activities" which had been previously considered by the Supreme Court of Puerto Rico upon deciding other Act 75 cases.[6] The eight activities relied upon to ascertain dealership status under the law are "in general terms"[7] the following: (1) activities necessary to the transportation of the products or services from the manufacturer to the consumer or to some point in between; (2) publicity; (3) market coordination; (4) merchandise deliveries; (5) collections; (6) the keeping of an inventory; (7) promotion, and (8) closing of sales contracts.

■ Therefore, under *EBI, Inc.* and the Puerto Rican cases cited therein, facts would have to be evaluated on the eight activities of the agent to determine dealership status.

The grounds upon which ATAPCO objects the Magistrate's Report and Recommendation are essentially that the parties are not residents of Puerto Rico nor have represen-

---

6. *J. Soler Motors, Inc. v. Kayser Jeep International Corp.,* 8 P.R. Supreme Court Official Translations 138, 108 D.P.R. 134 (1978); *San Juan Mercantile Corp. v. Canadian Transport Co.,* 8 P.R. Supreme Court Official Translations 218, 108 D.P.R. 134 (1978); and *Córdova & Simonpietri Insurance Agency v. Crown American Insurance Co.,* 12 P.R. Supreme Court Official Translations 1003, 112 D.P.R. 197 (1987).

7. *EBI, Inc. v. Gator Industries,* 807 F.2d at p. 3 quoting from the Supreme Court of Puerto Rico in *San Juan Mercantile v. Canadian Transport Co.,* supra.

tatives in Puerto Rico [8], that defendant ignores the final destination of the sold merchandise to Capens and that there is no written contract. In the Memorandum (Docket 42) ATAPCO reiterates these arguments and adds that Capens does not have a warehouse, that Capens is exclusively a sales office, Capens does not have a showroom, that Capens rarely visits Puerto Rico and certainly "not to take orders", and finally that Capens did not advertise the merchandise in Puerto Rico.

The absence of one or two or a few of the activities of a dealer is not sufficient grounds to sustain that the person is not a dealer. *Roberco, Inc. y Colón v. Oxford Inds., Inc.,* 122 D.P.R. 115 (1988). Certainly, Capens promotes the products and closes sales contracts, as factually ascertained by Capens, and notwithstanding absence of any publicity in Puerto Rico, Capens incurs the responsibilities and risk of credit, collections, shipment, or deliveries. Therefore, Capens may be considered a "dealer" under the act, especially when Capens has created a market for defendant in excess of $1,000,000.00 (Exhibit # 12 of Plaintiff's Memorandum). See *EBI, Inc.,* supra, *San Juan Marine v. Canadian Transport Co.,* 103 D.P.R. 211 (1978); *Cobos Licia v. Dejean Packing,* 124 D.P.R. 86 (1989); *Roberco, Inc. y Colón v. Oxford Inds., Inc.,* supra; *Medina & Medina v. Country Pride,* 122 D.P.R. 172 (1988), and *Ramos v. Brother International Corp.,* 588 F.2d 817 (1st Cir.1978).

The Supreme Court of Puerto Rico in *Roberco Inc. y Colón v. Oxford Inds., Inc.* supra at p. 131–132 expressly stated that the eight criteria enumerated above are not an exhaustive enumeration of all the criteria under the law and no one criteria is determinant nor is any criteria entitled to more weight and is more important than the others. Hence, the absence of one or more criteria is not per se determinative. *Sudouest Import Sales Corp.*

*v. Union Carbide Corp.,* 732 F.2d 14, 16 (1st Cir.1984); *Roberco, Inc. y Colón v. Oxford Inds., Inc.* at p. 132.[9] Throughout the relationship with ATAPCO and its predecessor, Capens' President, Mr. Camilo Fernández, and/or his daughters traveled to Puerto Rico several times a year in order to visit clients. Capens is in constant communication with these clients either via telephone, facsimile or at Capens offices or at trade shows held in the United States. (Hrg.Tr. at p. 79–80). Capens buys and re-sells merchandise from ATAPCO, Capens further coordinates delivery through a freight consolidator. Capens further handles deliveries and collections of the products. All these activities were conducted in order to promote and secure the closing of sales contracts. Therefore taking into consideration the totality of Capens activities for ATAPCO's products in Puerto Rico, the Court concludes that Capens is a dealer within the purview of Act 75 entitled to the act's protection.

### Conflicts of Law and Dominant Contacts

Defendant's objections to the Magistrate's Report and Recommendation are also principally based on the allegation that there are issues of conflict of law and dominant contacts which, indicate that Puerto Rico is not the governing statutory jurisdiction. Defendant advocates that Law 75 does not apply to the case and that therefore plaintiff is not entitled to its protection. Defendant's objections do not persuade the Court.

Defendant's position is that Puerto Rico's Dealers Act does not apply to the situation at bar since the contract was "made and entered into effect in Missouri, executed in Maryland and perfected in New Jersey". See Objections to the United States Magistrate Conclusions and Recommendations, Docket # 27, at no. 3(16).

Section 278(b) of the Dealer's Act states in pertinent part that if no just cause exists for

---

8.  The Court addresses the dealership status issue considering the requirements expressed in the Act and its interpretative jurisprudence. The Court will not impose requirements which are not contained therein. The Act does not require the dealer to reside in Puerto Rico, it requires the dealer's functions to have results in Puerto Rico. That is, the creation of a market in Puerto Rico.

9.  The enumeration of criteria, to determine dealership made by the Supreme Court of Puerto Rico is numerus apertus and not numerus clausus.

the termination of the dealer's contract or for detriment or diminishment to the established relationship, or for the refusal to renew same, the principal shall have executed *a tortious act* against the dealer and shall indemnify it to the extent of the damages caused him.

■ The Commonwealth of Puerto Rico has adopted the dominant contacts rules of choice of law. *Vda. de Fornaris v. Amer. Surety Co. of N.Y.*, 93 D.P.R. 29, 49 (1966); [10] *Bonn v. Puerto Rico International Airlines, Inc.*, 518 F.2d 89 (1st Cir.1975). Interpreting *Vda. de Fornaris*, supra, the First Circuit Court stated in *Bonn*, supra, that under section 175 of the Restatement of Conflict of Law (1971) [11] the place of conduct and injury are to be considered among the contacts criteria in determining the "dominant contacts".

■ The dominant contacts that arise from the facts of the instant case, favor the law of the commonwealth of Puerto Rico. The place of conduct points towards Commonwealth law. Puerto Rico is the place wherein the products which are object of the agreement are sold, where both parties derive sales benefits, therefore the place where the market was established. That is, ATAPCO's products are sold to Puertorican consumers for the benefit of the parties. Puerto Rico is where the violation of the agreement occurred, 10 L.P.R.A. 278b. Further, the appointed new sales representative, Blas Rossy Asencio, through which the dealership contract was allegedly violated resides in Puerto Rico. See *Southern Intern. Sales v. Potter & Brumfield Div.*, 410 F.Supp. 1339 (D.P.R.1976).

ATAPCO alleges having no way of knowing what is the final destination of the merchandise sold to Capens. Notwithstanding, the evidence establishes that, ATAPCO serves orders received from Capens to a freight consolidated location, having knowledge of the addressee and final destination of the goods. Exhibits 8 and 9. The documents submitted show that orders were noticeably addressed for shipment to Capens' customers in Puerto Rico.[12] Thus, ATAPCO's allegation that competency and jurisdiction lie elsewhere is not accepted by the Court.

### Conclusion

Based on the evidence submitted and arguments presented at the hearings Capens showed "likelihood of success on the merits" since Capens succeeded at establishing that ATAPCO terminated the exclusive distribution relationship for the market of Puerto Rico by initiating "without just cause" a direct distribution through a sales representative, thus affecting Capens' existing exclusivity. As such, the Court grants Capens' request for the temporary relief provided in Article 3A of the Dealers Act of Puerto Rico and therefore ATAPCO is ordered to desist from any and all actions in prejudice and/or diminishment of the exclusive relation established prior to December, 1993 between Capens as dealer and ATAPCO as principal.

IT IS SO ORDERED.

**10.** The Supreme Court of the Commonwealth of Puerto Rico has further applied the choice of law rules in the cases of *Federal Ins. Co. v. Dresser Ind., Inc.*, 111 D.P.R. 96 (1981); *Green Giant Co. v. Tribunal Superior*, 104 D.P.R. 489, 499 (1975); *A.H. Thomas Co. v. Superior Court*, 98 D.P.R. 864, 869 (1970), and the Federal Courts have applied those principles in *Ríos Jimenez v. American Airlines, Inc.*, 579 F.Supp. 631, 632 (D.P.R. 1983); *Marcano Díaz v. Eastern Airlines, Inc.*, 698 F.Supp. 18 (D.P.R.1988); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 745 F.Supp. 79 (D.P.R.1990).

**11.** Sections 145 and 178 of the Restatement were also relied upon by the Supreme Court of Puerto Rico in the *Vda. de Fornaris* case, supra.

**12.** Plaintiff's exhibits # 8 and 9 of the Magistrate Judge hearing.