**A.M. CAPEN'S CO., INC.,**
**Plaintiff, Appellee,**

v.

**AMERICAN TRADING AND PRODUCTION CORPORATION and Blas Rossy Asencio and His Conjugal Partnership, Defendants, Appellants.**

No. 95–1870.

United States Court of Appeals, First Circuit.

Heard Dec. 8, 1995.

Decided Jan. 18, 1996.

**318**

José Enrique Colon Santana for appellant.

Philip E. Roberts for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from a preliminary injunction issued by the district court barring defendant-appellant American Trading and Production Corp. ("ATAPCO") from terminating plaintiff-appellee A.M. Capen's Co., Inc. ("Capen's") as an exclusive distributor for Puerto Rico of ATAPCO's products. Capen's had filed an action in the United States District Court for the District of Puerto Rico alleging that ATAPCO violated P.R. Laws Ann. tit. 10, § 278, *et seq.* (1976 and Supp. 1989) (a.k.a. Law 75, the Puerto Rico Dealer's Act) by terminating the exclusivity of the distributorship. Section 278a of title 10 provides:

> Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

The injunction was issued pursuant to the provisional remedy provision, Section 278b-1 of the Act, which provides:

> In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.

There is no dispute as to the basic facts. In 1978, Capen's entered into an agreement with ATAPCO's predecessor, Sheller–Globe, to be the exclusive distributor of Globe–Weiss and Steelmaster office products in

Puerto Rico, the Caribbean, the Dominican Republic, and Central and South America. The agreement did not contain an expiration date. Although confirmed in a written letter, the parties did not sign a formal contract because they could not agree on the law that would apply to the contract. When ATAPCO took over, the arrangement with Capen's continued, as did the disagreement as to choice-of-law and forum selection clauses.

ATAPCO, with its principal place of business in Missouri, wanted Missouri law to apply to the contract. Capen's, a New Jersey corporation with its principal place of business in that state, wanted Puerto Rico law to apply. As a result, ATAPCO and Capen's never signed a formal contract. In December 1993, ATAPCO wrote a letter to Capen's in which it terminated the exclusive aspect of the dealership. ATAPCO did not end the Capen's dealership; it reserved the right to sell to others. ATAPCO made Blas Rossy Asencio a sales representative for the area for which Capen's originally had the exclusive rights. This lawsuit ensued.[1]

### Proceedings of the District Court

The district court adopted the recommendation of the Magistrate Judge that the provisional remedy in the Puerto Rico Dealer's Act be granted. The court then issued a full-blown opinion giving the reasons for its action. It found that Capen's "has exhibited a likelihood of success on the merits." *A.M. Capens Co., Inc. v. American Trading and Prod. Corp.*, 892 F.Supp. 36, 38 (D.P.R.1995). It then held:

> Capens has also shown that his business will suffer irreparable injury if the injunction is not granted because Mr. Rossy Asencio will continue to sell the products in the areas wherein Capens had the exclusivity with the added competitive advantage for Asencio of freight charges assumed by ATAPCO. The above will obviously mean that Capens' business market will be significantly irreparably diminished.
>
> The harm that Capens will suffer most certainly outweighs ATAPCO's possible harm: the business area will remain un-

changed (the Caribbean and Central and South America) and ATAPCO will continue receiving benefits, either through Mr. Rossy Asencio or through A.M. Capens; however, the harm is for Capens who will lose business market should Mr. Rossy Asencio continue to interfere with the customers.

*Id.* at 38–39. Finally, the court held that the public interest would not be adversely affected by the preliminary injunction. *Id.* at 39.

■ It is obvious that what we are reviewing is not only a provisional remedy under the Puerto Rico Dealer's Act, but a preliminary injunction that meets, at least *prima facie*, all federal requisites. The appropriate standard for reviewing a preliminary injunction is abuse of discretion. *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 239 (1st Cir.1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

### Analysis

We start our analysis with the only finding of the district court to which defendant has objected—probability of success on the merits. Defendant's appeal is posited on two contentions: that Puerto Rico law does not apply; and that plaintiff is not a dealer under the Puerto Rico Dealer's statute. As the district court noted, this is "a close matter." *Id.*

That is because Capen's does not fit the mold of a typical Puerto Rican dealer. It does not advertise in Puerto Rico and has neither a warehouse nor a showroom on the Island. It sells exclusively to retailers and wholesalers. Though Capen's sometimes sends an agent to Puerto Rico, it does not have a resident agent on the Island and is not qualified to do business in Puerto Rico on a regular basis. On the other hand, the annual sales made by Capen's in Puerto Rico under its exclusive distributorship increased from about $30,000 in 1978 to $423,000 in 1993. Total Puerto Rico sales of ATAPCO products for the five-year period spanning from 1989 to 1993 came to about $1,976,000.

The first issue is what law applies. This necessitates an examination of the conflict of

---

1. Capen's has sued Blas Rossy Asencio for tortious inference with contractual relations.

law principles governing contract and tort law.

### Contract Factors

ATAPCO contends that the district court incorrectly applied Puerto Rico choice of law rules to the facts. It stresses that *none* of the acts—negotiation of the contract, performance of the contract obligations, or breach of the contract—took place in Puerto Rico. It points out that neither it nor Capen's has offices or employees located in Puerto Rico.

■ The Supreme Court of Puerto Rico has approved the "dominant or significant contacts" test for contract and tort actions. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 745 F.Supp. 79, 82 (D.P.R.1990). Thus, "the laws of the jurisdiction with the most significant contacts with respect to the disputed issue should apply." *Id.* In determining this question, recourse to the Restatement (Second) of Conflict of Laws is appropriate. *Id.* (citing Sections 6 and 188).

Under Section 188 of the Restatement, absent a contractual choice of law, the contacts to be taken into account in a contract action include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188 (1971).

■ The places of contracting and negotiating the contract in question occurred in the continental United States. ATAPCO and Capen's met in St. Louis, Missouri, to discuss the contract; they also spoke by phone. However, "[s]tanding alone, the place of contracting is a relatively insignificant contact." *Id.* § 188 cmt. e.

The performance of the contract takes place, in part, in the continental United States. When Capen's wishes to purchase products from ATAPCO, it places an order with ATAPCO's customer service offices in Pennsylvania or Missouri. The goods are then sent to Capen's in New Jersey or to the point of embarkation. Sometimes Capen's sends a trailer to the Pennsylvania office to pick up the merchandise. But performance also occurs in Puerto Rico—where the market is—because the contract granted Capen's the exclusive right to sell ATAPCO's products there. *See Id.* § 188 cmt. c ("[A] state where a contract provides that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice.").

The location of the subject matter of the contract similarly varies, depending on one's view. If the *products* sold by ATAPCO, and then by Capen's, are considered the subject matter, they start out in Pennsylvania or Missouri (and Kentucky according to ATAPCO) and end up in New Jersey. Arguably, this is the end of the line because when the goods are shipped to Puerto Rico, they become the subject of contracts between Capen's and its customers in Puerto Rico. ATAPCO, not surprisingly, takes this position, pointing out that it has no direct contacts in Puerto Rico.

The other subject matter of the contract is the status of Capen's as the exclusive distributor of ATAPCO's merchandise. This, it seems clear, is located in Puerto Rico. It is this subject matter which is in dispute, rather than, say, the price of the goods or the manner of their delivery to Capen's. The essential purpose of the exclusive distributorship was to enable Capen's to sell the products it purchased from ATAPCO in Puerto Rico without competition.

The last factor—the location of the parties—does not point to Puerto Rico. ATAPCO, a Missouri corporation, has main offices in Pennsylvania and Missouri and also apparently conducts business in Maryland and Kentucky. Capen's is a New Jersey corporation with its place of business there. Capen's does not have any offices, warehouses or permanent employees in Puerto Rico; it does not have a Puerto Rico address or phone number. Capen's does, however, regularly send employees to Puerto Rico to take orders from customers.

■ A breach of Law 75 is considered a "tortious act." *Telenetworks, Inc. v. Motorola Universal Data Sys., Inc.*, 906 F.Supp. 75, 77 (D.P.R.1995). Section 278b of the Dealer's Act provides: "[i]f no just cause exists for the termination ... the principal shall have executed a tortious act against the dealer and shall indemnify it."

The Restatement of Conflict of Laws provides that in a tort action the law of the state with the most significant relationship to "the occurrence and the parties" controls. Restatement (Second) of Conflict of Laws § 145 (1971). The following contacts should be taken into consideration:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.*

The injury occurred in Puerto Rico because that is where the exclusive Capen's dealership was terminated. The termination directly impacts the position Capen's held in the Puerto Rico market. *See Coletti v. Ovaltine Food Products*, 274 F.Supp. 719, 722 (D.P.R.1967) (where an Illinois corporation terminated the distributorship of a Puerto Rican dealer, its failure to "place the goods in Puerto Rico at the disposal of the ... dealer" is a tortious act which "did not take place anywhere but in Puerto Rico"). Additionally, because Law 75 is aimed at compensating victims for wrongful terminations, Puerto Rico, the site of the injury, has a greater interest in applying its laws. *See* Restatement § 145 cmt. c; *Coletti*, 274 F.Supp. at 722 ("[R]egardless of the manner in which the defendant ... allegedly notified the plaintiff" of the termination of its distributorship, the defendant executed the tortious act within Puerto Rico.). Viewing all of the relevant factors as a whole, we find they cut in favor of applying Puerto Rico law.

Section 6 of the Restatement (Second) of Conflict of Laws sets forth general choice of law principles. Where there is no statute on point, the following factors should be considered:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

Taking the policy issues first, courts have recognized that Law 75 "was passed to protect the interests of commercial distributors working in Puerto Rico." *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F.Supp. 103, 106 (D.P.R.1992). Law 75 is " 'directed to level the contractual conditions between two groups financially unequal in their strength.'" *Draft–Line Corp. v. Hon Co.*, 781 F.Supp. 841, 844 (D.P.R.1991) (quoting *Walborg Corp v. Tribunal Superior*, 140 D.P.R. 184, 189 (1975)), *aff'd*, 983 F.2d 1046 (1st Cir.1993).

The Dealer's Act was enacted by the Puerto Rico Legislature to prevent the economic exploitation of local dealers. The Legislature had observed that dealers in Puerto Rico were particularly vulnerable to summary termination once they had established a favorable market for a principal's products.

*Id.* at 843–44.

The Puerto Rico Dealer's Act has been described as embodying a "strong public policy." *Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 820 (1st Cir.1988) (response of Puerto Rico Supreme Court to a certified question concerning Law 75). The

case law establishes that Puerto Rico has a substantial interest in seeing that distributorships are not arbitrarily terminated or, if they are, that "due reparation" is provided to them. *Bonn v. Puerto Rico Int'l Airlines, Inc.,* 518 F.2d 89, 91 (1st Cir.1975).

As the district court pointed out, there is nothing in the statute that requires a dealer to be a resident of Puerto Rico, to be authorized to do business in the Commonwealth, or to have a place of business such as an office, showroom or warehouse on the Island. Section 278 of the Act defines "Dealer" and "Dealer's Contract":

> (a) Dealer: person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service;
>
> (b) Dealer's contract: relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

P.R.Laws Ann. tit. 10, § 278 (1976 and Supp. 1989). Accordingly, Capen's appears to satisfy the definition of dealer within the Dealer's Act.

Although both Missouri and New Jersey have statutes protecting dealers, we do not think that either state has an interest in protecting Capen's in the instant circumstances. Missouri provides that a franchisor must give ninety days' notice to a franchisee of a termination of a franchise agreement and that, in the absence of such notice, a franchisee may recover damages. Mo.Rev. Stat. §§ 407.405, 407.410 (1974 and Supp. 1975). The law, however, only applies to distributors with a place of business in Missouri. Mo.Rev.Stat. § 407.400(1) (1974 and Supp.1975) (definition of "franchise"). It is plain that Capen's has no franchise presence in Missouri.

New Jersey has a Franchise Practices Act which provides that notice (60 days) must be given prior to the termination of a franchise agreement and that such a termination only can be based on "good cause." N.J.Rev.Stat. § 56:10–5 (1971). As in Missouri, the Act applies only to a franchisee who establishes a "place of business" in New Jersey. *Id.* § 56:10–4. Thus, even though Capen's is located in New Jersey, it does not qualify for the Act's protection.

Because all three jurisdictions evince a general policy of protecting distributors, we can fairly infer that the application of Puerto Rico law would not offend Missouri or New Jersey. By restricting protection to only those dealers who service customers within the state, Missouri and New Jersey are concerned with dealers who have established markets within their borders. Thus, it makes sense, in this case, to apply the law of the jurisdiction in which Capen's maintains its market.

In this context, ATAPCO argues that under P.R. Laws Ann. tit. 14, § 2403 (1989), Capen's is not required to file informational documents (certificate of incorporation, statement of assets and liabilities) with the Puerto Rico Department of State to qualify as doing business in Puerto Rico. Section 2403 exempts from filing those corporations which only receive, outside Puerto Rico, orders by mail or otherwise and fill the orders by shipping the goods into Puerto Rico from the outside. ATAPCO argues that because Section 2403 exempts Capen's from having to qualify to do business in Puerto Rico, Puerto Rico can have no interest in protecting the status of Capen's as a distributor. ATAPCO presents no cases in support of this contention and, as already noted, there is nothing in the Dealer's Act giving rise to such a requirement.

This is an appeal from a grant of preliminary injunctive relief. When an appeal comes to us in that posture, the appellate court's "conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes," rather than as comprising the ultimate law of the case. *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 6 (1st Cir.1991); *accord Jimenez Fuentes v. Torres*

*Gaztambide,* 807 F.2d at 238. In this case, we conclude that, bringing all the factors into consideration, the law of Puerto Rico most probably applies to this hybrid contract/tort action and, perforce, the district court properly made reference to the Puerto Rico Dealer's Act for the purpose of the motion to impose a provisional remedy.

Because ATAPCO has neither briefed nor argued the other factors that the district court considered in issuing the preliminary injunction, we need not consider them. We must note, however, after reviewing the record carefully, that we agree with the district court's findings: that Capen's would suffer irreparable harm unless a preliminary injunction issued; that no appreciable harm would be incurred by ATAPCO by reason of such relief; and that the public interest would not be adversely affected by a preliminary injunction.

*Affirmed.*