**PREUSSAG INTERNATIONAL STEEL CORPORATION, Plaintiff,**

v.

**INTERACERO, INC., et al., Defendants.**

**Civil No. 96–1391 (JP).**

United States District Court, D. Puerto Rico.

Jan. 30, 1997.

José R. Gaztambide, Gaztambide & Plaza, San Juan, PR, for Plaintiff.

José A. Gallart, Hato Rey, PR, for Defendant.

### OPINION AND ORDER

PIERAS, District Judge.

## I. INTRODUCTION AND BACKGROUND

The Court has before it Plaintiff's Motion for Partial Summary Judgment (**docket No. 24**), defendants' Opposition to Motion for Summary Judgment (**docket No. 28**), and plaintiff's motion for Leave to Reply to Defendants [sic] Opposition to Partial Summary Judgment (**docket No. 34**). The Court will hear all sides to the Motion for Partial Summary Judgment, so the plaintiff's motion for leave to reply is hereby **GRANTED.**

The following facts are undisputed. Preussag International Steel Corporation ("Preussag") distributes steel products at the wholesale level throughout the world.[1] Its main offices are in Atlanta, Georgia. It conducted its business in Puerto Rico from May 1, 1991 to February 15, 1996 through an arrangement with codefendant Interacero, Inc. ("Interacero"), under which, Interacero acted as Preussag's exclusive sales representative in Puerto Rico.

Interacero is a corporation under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico. Codefendant Kurt Legner ("Legner") is the president of Interacero, and codefendant Eva Lisa Santiago ("Santiago") is Legner's wife. Both Legner and Santiago reside in Puerto Rico. Codefendant Lourdes Cabrera is an employee of Interacero and also resident of Puerto Rico. Although these three individuals have been named by Preussag as defendants in this action, Preussag's motion for partial summary judgment is not directed

---

1. Preussag, A.G., a multinational German company is the owner of the North American holding company that owns Preussag International Steel Corporation.

against them. Plaintiff only moves the Court to enter summary judgment against codefendant Interacero.

At the heart of the plaintiff's Motion for Partial Summary Judgment, lie the dynamics by which money from Interacero's sales of Preussag's steel products in Puerto Rico were distributed to the two parties under their agreement. Interacero was responsible for making sales to and collecting corresponding debts from clients.[2] Preussag and Interacero split net receipts (profits) collected by Interacero. All of Interacero's revenue under the agreement derived from these commissions. In their Initial Scheduling Conference Memorandum, the defendants explained that Interacero's commission was "based on a formula contingent on sales, collections and 'net profit' after the deduction of certain expenses, including costs of merchandise, shipping, etc., and 'interest' on the cost of products warehoused by Preussag on the Island."

At the beginning of 1996, Preussag expressed concern regarding several accounts receivable held by Interacero. Preussag's concern stemmed from the old age of the supposedly unaccounted-for debts. Faced with the suspicious circumstances surrounding these aging accounts, Preussag sent two employees to Puerto Rico to investigate the matter. According to the investigators, those supposedly unpaid accounts had in fact been paid by debtor customers to Interacero. The plaintiff has alleged, and the defendants have not disputed, that Interacero had been issuing receipts to the customers for full payment, and maintained copies of these receipts in its deposit records. However, Interacero was reporting disparate payment amounts to Preussag, and had been remitting less to Preussag than the customers had paid. Therefore, Preussag's information regarding those accounts, which it obtained directly from Interacero, was inaccurate. To further explore the situation, Preussag sent the accounting firm of Price Waterhouse to examine Interacero's accounts.

Price Waterhouse twice investigated Preussag's account with Interacero. According to Price Waterhouse's report of its first investigation, Interacero had collected over Five Hundred Thousand Dollars, as of January 31, 1996, that it had not remitted to Preussag. According to Price Waterhouse's report of its second investigation, the amount had reached Six Hundred Twenty–One Thousand and Fifty–One Dollars and Twenty–One Cents ($621,051.21), by March 31, 1996.

On February 15, 1996 Preussag terminated its agreement with Interacero.[3] Preussag filed this action on April 1, 1996. In its complaint, Preussag has asked for various forms of relief. In particular, Preussag seeks Six Hundred and Eighty–Eight Thousand Dollars ($688,000) plus interest as compensation for delinquent accounts; injunctive relief prohibiting Interacero and its officers from diverting any additional funds or assets or obtaining any other goods from the plaintiff; judgment against Legner under a veil-piercing theory; a declaratory judgment that 10 L.P.R.A. § 278 (the Puerto Rico Dealers Act) does not protect Interacero; an additional $500,000 in compensatory damages based on loss of business; two million dollars ($2,000,000) in punitive damages; attorney's fees and costs; and prejudgment interest. Preussag's motion for summary judgment and this order deal solely with compensatory damages stemming from the overdue accounts.

With respect to those compensatory damages, the defendants do not deny that Interacero has not paid the money to Preussag, nor that it would have to do so under the agreement. The defendants instead allege that Preussag also owes Interacero money. The defendants enumerate several reasons why Preussag is indebted to Interacero, each of which essentially constitutes a counterclaim. Before discussing these claims individually, the Court notes that none of these claims were raised by the defendants in their answer to the complaint. Each has been raised for the first time in the defendants'

---

**2.** Some customers would pay Interacero who would in turn remit such payments to Preussag. Other customers would pay Preussag directly.

**3.** Interacero has filed an action in Puerto Rico Superior Court alleging that Preussag's unilateral act of termination was illegal under Law 75, 10 L.P.R.A. § 278.

opposition to the plaintiff's motion for summary judgment. In their opposition to plaintiff's motion for summary judgment, the defendants first allege that Preussag has not paid Interacero all of the commissions Interacero is entitled to. Second, the defendants make a claim that Preussag incorrectly overcharged it for interest costs associated with inventory and accounts receivable. Third, the defendants allege that Preussag triple charged Interacero for the costs of bad debt by charging Interacero for "reserves" for bad debt, for credit insurance, and for offsetting actually uncollected debts against Interacero's future commissions. Fourth, the defendants claim that Interacero made outlays on Preussag's behalf for which Interacero should be compensated. Fifth, the defendants maintain that Preussag charged Interacero depreciation and equipment rental for equipment that "seems to have been property of Preussag." Finally, they assert that expenses such as meals, office supplies, and bank charges "were routinely charged against Interacero's commissions."

## II. *SUMMARY JUDGMENT STANDARD*

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> "[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Usually, this entails the following methodology. First, the court must identify genuine material factual disputes, drawing all reasonable inferences in favor of the party against whom summary judgment is sought. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). If there are genuine material factual disputes, summary judgment is inappropriate. "Material means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorable to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). "A dispute is genuine if the parties' positions on the issue are supported by conflicting evidence." *The International Association of Machinists and Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196 (1st Cir.1996). However, "[w]hile an inquiring court is constrained to examine the record in the light most favorable to the summary judgment opponent and to resolve all reasonable inferences in that party's favor [citations omitted], defeating a properly documented motion for summary judgment requires more than the jingoistic brandishing of a cardboard sword." *Id.* In other words, a court need not credit "conclusory allegations, improbable inferences, and unsupported speculation". *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Where there are no material facts in dispute, the court proceeds to search the undisputed facts in an effort to discern whether the moving party has shown that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Where, as in this case, the moving party would bear the burden of persuasion at trial, it must first show that there is no genuine dispute as to the material facts, and then it must satisfy the burden it would have at trial. To do the latter, it must show that it would be entitled to a directed verdict at trial (i.e. no reasonable jury could find any way but in favor of the moving party). *Id.* at 323, 106 S.Ct. at 2552–53. If the moving party has not met its respective summary judgment standard, the motion should of course be denied. However, where the moving party has met its initial burden of proof, the burden shifts to the nonmoving party to show that some triable issue, whether factual or legal, remains unresolved. *Id.* at 324, 106 S.Ct. at 2553. If the nonmoving party successfully meets its burden, the motion must be denied; if it does not, the motion will be granted. *Id.*

## III. *THE LAW*

### A. *Choice-of-Law*

■ A district court presiding in a diversity jurisdiction case must follow state substantive law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Moores v. Greenberg*, 834 F.2d 1105, 1107 (1st Cir.1987). The district court is to apply the substantive law, including the choice-of-law rules, that a court of the jurisdiction in which it sits would apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). When the highest court in the jurisdiction has not spoken on the question at issue, the district court is obligated to determine how that tribunal would resolve the matter. *Moores*, 834 F.2d at 1107. The court should "look to 'such sources as analogous state court decisions, adjudications in cases elsewhere, and public policy imperatives.'" *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 734–5 (1st Cir.1990) (quoting *Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir.1988)).

The motion before the court is for the collection of a debt. The payment of that debt stems from the operation of a commercial arrangement between the plaintiff and codefendant Interacero. With respect to contract cases the Puerto Rican courts have adopted the "most significant contacts" test of the Second Restatement. *A.M. Capen's Co. v. American Trad. & Prod. Corp.*, 74 F.3d 317, 321 (1st Cir.1996); *Fornaris v. Amer. Surety Co. of N.Y.*, 93 D.P.R. 29 (1966). Thus, the Court will utilize the Second Restatement approach to determine which law to apply to the issue before it.

Under the Second Restatement of Conflicts, an issue in contract is governed by the law "of the state, which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971). A court making a choice-of-law decision in a contract case must take into account the following contacts:

(a) the place of the contracting,

(b) the place of the negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188(2). Looking at those contacts, the Court finds that Puerto Rico law must control. The Court has not been made aware of where the contract was negotiated and signed. However, these contacts are of less significance than the place of performance and the location of the subject matter of the contract where the issue is one of performance. *Id.* § 187 cmt. b. The contract between Preussag and Interacero constituted a dealership arrangement, performance of which took place in Puerto Rico. Interacero acted as Preussag's dealer in Puerto Rico, making sales and collecting debts thereon in Puerto Rico. Preussag delivered steel to Puerto Rico based on Interacero's orders. Any other activities, such as making, loading or shipping the steel, were incidental to the agreement between Preussag and Interacero.

Secondly, the subject matter of the contract was centered in Puerto Rico. The contract was not one for steel. It was instead an exclusive dealership arrangement, centered in Puerto Rico, and that dealership was the subject matter of the contract from which this action springs.

The final factor, the location of the parties, also weighs in favor of applying Puerto Rico law. Interacero is a Puerto Rican corporation doing business in Puerto Rico. Preussag has its principal offices in Georgia, but it directs sales throughout the world. In applying the fifth Restatement contact (indeed, any of the enumerated contacts), the Restatement reminds the Court that it must keep the overarching choice-of-law principles of Section 6 of the Restatement in mind. Among those principles is the protection of justified expectations. Restatement (Second) Conflict of Laws § 6(2)(d). The Court believes that application of Puerto Rico law to this case, where the party not from Puerto Rico has directed its business toward Puerto Rico, furthers the principle that the Court's choice of law must protect expectations.

Therefore, based on our analysis under the Restatement's choice-of-law algorithm, the Court will apply Puerto Rico law.

### B. Puerto Rico Law

Under Puerto Rico law, Preussag bears the burden of proving Interacero's obligation, and that it is owing. 31 L.P.R.A. § 3261 ("[p]roof of obligations devolves upon the persons claiming their fulfillment, and that of their extinction upon those opposing it"). Obligations may be created only "by law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." 31 L.P.R.A. § 2992. "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994. Finally, "[e]very obligation, the fulfillment of which should not depend upon a future or uncertain event or upon a past event, unknown to the parties in interest, shall be immediately demandable." 31 L.P.R.A. § 3041.

If Preussag meets its burden by showing that Interacero is presently obliged to pay Preussag, Interacero will have the burden of proving that the debt has been extinguished. 31 L.P.R.A. § 3261. Obligations are extinguished (1) by their payment or fulfillment; (2) by the loss of the thing due; (3) by the remission of the debt; (4) by the merging of the rights of the creditor and debtor; (5) by compensation; or (6) by novation. 31 L.P.R.A. § 3151.

In summary, Preussag has the burden of proving that the undisputed facts show that Preussag and Interacero had an agreement, and that Interacero had a current obligation under that agreement to pay money to Preussag. If Preussag can successfully make these showings, Interacero can still prevail by rebutting Preussag's demonstration that the facts are undisputed or that Interacero has an obligation to pay any undisputed debt.

## IV. ANALYSIS

Neither party debates the existence of the contract between Preussag and Interacero. The only material fact at issue, then, is how much money, if any, was Interacero obligated to remit to Preussag under their contract. If that material fact is genuinely disputed, this Court can not enter summary judgment.

Preussag has submitted two reports by Price Waterhouse that show that Interacero presently has collected and failed to remit to Preussag at least Six Hundred Twenty–One Thousand and Fifty–One Dollars and Twenty–One Cents ($621,051.21).[4] This fact has not been genuinely contested by Interacero, who has offered nothing to dispute the fact that it has collected but failed to remit that amount of money. In fact, the defendants have not even contested the fact that the money they collected on behalf of the plaintiff is owing. Instead, the defendants' opposition to the plaintiff's motion for summary judgment rests on the argument that the plaintiff owes Interacero money and that debt should be offset against the money that Interacero owes Preussag. Interacero lists several debts it would have the Court discern and offset. We address each in turn.

### A. Outstanding Commissions

■ First, Interacero states that Preussag owes it commissions both for sales of Preussag steel made during the last several weeks before the relationship ended and for what they call outstanding sales. In their statement of contested facts, Interacero alleges that "Preussag owes and has not paid sales commissions amounting to at least $250,000.00." Codefendant Kurt Legner has sworn to this fact. However, the Court holds that Kurt Legner's swearing to the fact that the plaintiff owes "at least $250,000.00" to Interacero does not suffice to create a factual

---

4. The plaintiff's motion for summary judgment states that the second Price Waterhouse report confirms that Interacero owes Preussag "six hundred thousand twenty one hundred and fifty-one dollars with twenty-one cents ($621,-251.21)." This statement obviously contains at least one typo. The Court takes it to mean $621,051.21. A little harder to explain is plaintiff's prayer for relief, in which, without explanation, the amount sought jumps to $621,678.00. The distinction is slight (less than $650.00), but not unnoticed. The Court will use the figure supplied by Price Waterhouse in their second report, $621,051.21.

controversy and thus defeat the plaintiff's motion for summary judgment.

As the United States Court of Appeals for the First Circuit has stated, "the test for summary judgment is steeped in reality." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1990). The Court will not allow the defendants in this case to defeat the plaintiff's substantiated claims merely by swearing, "it's not true," and that is essentially what the defendants here seek to do. The plaintiff has produced two reports from a reputable accounting firm that show that Interacero is delinquent in remitting collected monies owed to the plaintiff. Those documents have substance and stand on their own. The defendants do not even dispute the veracity of those reports. Now, in an attempt to circumvent the plaintiff's strong showing, Mr. Legner simply states, under oath, that Preussag owes Interacero "at least $250,000.00." The defendants have offered no proof to support Mr. Legner's statement. We also cannot understand why the defendants cannot state with more specificity how much they alleges Preussag owes Interacero.

The defendants' proffer is not enough. Mr. Legner's statement cannot contest the plaintiff's showing regarding the amount that Interacero owes Preussag. The Court believes that Mr. Legner's statement merely amounts to a monkey wrench with which the defendants seek to prevent the Court's entry of partial summary judgment. More is required. "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. *Id.* (citing *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989))." "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary

judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz,* 896 F.2d at 8 (citing *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 109–10 (1st Cir.1988)). We do not take Mr. Legner's unsupported speculation to create a factual controversy.[5] Indeed, if a valid motion for summary judgment in a money damages contract action could be defeated by the simple expedient of stating, without support, that the movant also owes the respondent money, summary judgment would be a toothless device. Defendants' allegations in their opposition to the plaintiff's motion for summary judgment do not contest the law or the plaintiff's proof of the amount of the debt claimed by the plaintiff.

Having said that, the Court notes that the plaintiff admits to owing codefendant Interacero some commissions.[6] Specifically, the plaintiff has agreed that, as of February 15, 1996, it owed Interacero $2,331.43 in commissions, which it has never paid. Preussag has also admitted that if Interacero would have paid the entire amount of money it owes Preussag, Preussag would in turn owe to Interacero commissions amounting to $27,-947.30. Therefore, if we were to grant the plaintiff's motion for partial summary judgment for the entire $621,051.21, the plaintiff would then owe Interacero the sum of $30,-278.73 in sales commissions.

## B. Improper Interest Charges

■ In its opposition to plaintiff's summary judgment motion, Interacero next alleges that Preussag improperly charged it for interest on inventory, materials in transit, and accounts receivable. Under their agreement, the parties split, along with net profits, the costs of interest on the above items, calculated at the prime rate. The plaintiff's parent company provided financing at a low-

5. Perhaps Mr. Legner's statement could have been explained by defendants' counsel, Mr. José Gallart, had he come to the Pretrial Conference. However, by not attending that Conference, Mr. Gallart and his client lost any opportunity to further discuss Mr. Legner's vague and conclusory, albeit sworn, statement.

6. The plaintiff failed to mention this fact in its initial Motion for Partial Summary Judgment, but in its reply to the defendant's opposition, the plaintiff has explained that it does owe the defendant some money in commissions.

er rate than the prime lending rate, but Preussag billed interest costs at the prime rate, and Interacero was responsible for half of those costs. In their opposition, the defendants now argue that the costs for interest that Preussag charged were "untrue," and they assert a claim or defense that $427,-695.85 was improperly deducted from Interacero's commissions. The plaintiff, in its reply, asserts that Interacero knew from the beginning of the parties' contractual relationship that interest was to be determined by the banking market, not by the actual interest charged by whomever financed the inventory.

The defendants' allegation is a compulsory counterclaim, made long after the pleading stage. Under Rule 13 of the Federal Rules of Civil Procedure, "any claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction" must be stated as a counterclaim. The defendants' failure to assert this counterclaim at the time they answered the complaint or soon afterwards constitutes a waiver of those claims. Therefore, the Court cannot address a counterclaim made initially in a motion for summary judgment when that counterclaim was never raised in the pleadings. The defendants have first raised the issue of false interest charges in their January 10, 1997 Opposition to Motion for Summary Judgment, which the Court received from the Clerk of Court on January 14, 1997. Less than three weeks before the trial, they make their first allegations regarding interest charges and seek to have the Court offset the amount they owe to the plaintiff. The Court will not entertain such a delinquent compulsory counterclaim.

Moreover, the issue of interest does not bear on the question of whether or not Interacero owes the money claimed by the plaintiff. The defendants' "claim" regarding interest, as we have stated, is a counterclaim for damages which the defendants seek to offset against the money Interacero owes to Preussag.[7]

### C. Other Charges

The defendants' reply raises three additional claims. First, defendants argue that the plaintiff retained $38,000 as "reserves" for bad debts. At the same time, the plaintiff charged Interacero $41,206.03 for credit insurance "without ever evidencing such payment." Along these lines, the defendants further allege that Preussag would offset bad debts against future commissions. Although the defendants have not explained the relevance of these allegations, we must assume that these factual assertions amount to a claim that Preussag essentially "triple billed" Interacero for one item—bad debt. The defendants cite Interacero's commission statement from Preussag, dated September 30, 1995 to support its allegations that it was paying both bad debt and credit insurance. As support for the statement that bad debts were being deducted from Interacero's profits, the defendants cite the deposition of Doug Smith.[8]

Second, Interacero alleges that it made outlays of $7,805.38 for the benefit of Preussag, and that Preussag has never compensated Interacero for that outlay. As support for this statement, the defendants point the Court to a letter, dated January 29, 1996, from Interacero to Preussag explaining the money advanced by Interacero on behalf of Preussag.

The defendants next conglomerate several unrelated charges. The defendants allege that depreciation and equipment rental were improperly charged to Interacero, because that equipment "seems to have been proper-

---

**7.** As a final note on the issue of interest, the Court notes that the defendant overstates the amount it claims to have been wrongfully charged. The basis for the claim is that Preussag charged interest at the prime rate when it was receiving a more beneficial rate from its parent company. However, Interacero claims that the entire amount it has paid in interest costs was

wrongful. However, Doug Smith simply stated that interest rates on the inventory were not as high as the prime rate, not that they were non-existent.

**8.** We note that Doug Smith stated that Interacero was not double billed for bad debt.

ty of Preussag." To support this statement, the defendants point the Court to a stack of financial statements. However, the first of these to mention depreciation was made on June 30, 1994, and not every financial statement from after June 30, 1994 contains line items for both equipment depreciation and rental costs of either. Moreover, the defendants have not stated the specific amount they claim to have been wrongly charged for depreciation and rent. They also allege that expenses such as meals, office supplies, and bank charges "were routinely charged against Interacero's commissions," but defendants cite no support for this last allegation. They also fail to state the exact amount they claim to have been wrongly charged for these items.

As with defendants' allegations regarding improper interest payments, the problem facing these additional allegations is that they are counterclaims raised for the first time less than three weeks prior to trial. The bases for these counterclaims was or should have been known to the defendants long ago. Therefore, the Court will not hear these issues.

Moreover, these allegations in no way rebut the plaintiff's claims. Again, like the defendants' other recent defenses, they amount to counterclaims, damages for which the defendants seek to offset against the amount Interacero admittedly owes the plaintiff.

## V. CONCLUSION

The plaintiff has shown that Interacero owes it $621,051.21, but that, if Interacero were to pay that money, Preussag would owe Interacero $30,278.73. The defendants have not in any way disputed the plaintiff's factual allegations. Therefore, the Court **GRANTS** the plaintiff's **MOTION FOR PARTIAL JUDGMENT** for **FIVE HUNDRED NINETY THOUSAND SEVEN HUNDRED SEVENTY–TWO DOLLARS AND FORTY–EIGHT CENTS ($590,772.48).** Judgment will be entered accordingly.

IT IS SO ORDERED.